Stan S. Mallison (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
Eric S. Trabucco (SBN 295473)
Joseph D. Sutton (SBN 269951)
MALLISON & MARTINEZ
1939 Harrison Street Ste. 730
Oakland, CA 94612
Telephone: (510) 832-9999
Facsimile: (510) 832-1101

Cynthia L. Rice (SBN 87630)
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
1430 Franklin Street, Suite 103
Oakland, CA 94612
Telephone: (510) 267-0762
Facsimile: (510) 267-0763

Attorneys for Plaintiffs

Additional counsel listed on the signature page

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCARIA TENORIO, FRANCISCO VIERA, ABEL MIRANDA, PASCUALA SAUCEDO, CRISTINO SANTIAGO, LUCIA TORRES, ANTONIO TORRES, TERESA MIRANDA, IRMA CASTANEDA, EZEQUIEL AGUILAR, MARIA TERESA, CARLOS PEDRO, ARTEMIO SANTIAGO, and MARIA DE JESUS,<br><br>            Plaintiffs,<br><br>vs.<br><br>GABRIEL GALLARDO SR., an individual, MANUEL GALLARDO, an individual, SILVIA ESTHER GALLARDO, an individual, KERN COUNTY CULTIVATION, INC, a California corporation, NAZAR KOONER, an individual, PAWAN S. KOONER, an individual, and HARDEEP KAUR, an individual,<br><br>            Defendants. | Case No.:  1:16-CV-00283-DAD-JLT<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST GABRIEL GALLARDO, SILVIA GALLARDO, MANUEL GALLARDO AND KERN COUNTY CULTIVATION, INC.**<br><br>Hearing Date:  June 19, 2018<br><br>Time:  9:30 a.m.<br><br>Place: Department 5<br><br>*U.S. District Judge Dale D. Drozd* |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

III.  ARGUMENT ....................................................................................................12

 A.  IT IS WITHIN THE SOUND DISCRETION OF THIS COURT TO ENTER JUDGMENT AGAINST THE GALLARDO DEFENDANTS. ...................13

 B.  EACH OF THE PLAINTIFFS' CAUSES OF ACTION ARE ADEQUATELY PLEADED AND ARE MERITORIOUS. ........................13

  1.  Defendants Violated Plaintiffs' Rights as Seasonal Agricultural Workers and They Are Entitle to Recover Liquidated Damages for those Violations. (First Cause of Action) ..........................................14

  2.  Defendants Failed to Pay Minimum Wages in Violation of the FLSA (Second  Cause of Action)...............................................................16

  3.  Defendants Failed to Pay Minimum Wages in violation of the California Labor  Code (Third Cause of Action) .............................17

  4.  Defendants Failed to Provide Timely and Complete Meal and Rest Periods or Pay Additional Wages in Lieu Thereof in Violation of Cal. Labor Code § 226.7 (Fourth Cause of Action)..................................18

  5.  Defendants Failed to Indemnify Plaintiffs for Necessary Tools and Equipment in Violation of Cal. Labor Code § 2802. (Fifth Cause of Action) ............................................................................................21

  6.  Defendants Failed to Provide Plaintiffs With Complete and Accurate Itemized Wage Statements in Violation of Cal. Labor Code § 226. .22

  7.  Defendants Failed to Pay Plaintiffs All Wages Due Plaintiffs Upon Termination in violation of Cal. Lab. Code § 202. (Seventh Cause of Action) ............................................................................................23

  8.  Defendants Failed to Allow Inspection or Provide Copies of Plaintiffs Employee Records in Violation of Cal. Labor Code  § 226; (Eighth Cause of Action) ................................................................24

  9.  Defendants Failed to Produce or Permit Inspection of Plaintiffs' Personnel Records in Violation of Labor Code §1198.5  (Thirteenth Cause of Action) ...............................................................................25

  10.  Defendants Committed Violations of Cal. Labor Laws Against Other Aggrieved Employees and are Liable for Penalties Pursuant to California Labor Code §§ 2699, et seq., and Applicable Penalty Provisions (Twelfth Cause of Action) ...............................................26

  11.  Plaintiffs are Entitled to Injunctive Relief for Violation Labor Laws and the Farm Labor Contractors Act and the California Unfair Competition Law. (Tenth and Eleventh Causes of Action. ...............34

12.    Plaintiffs Are Entitled to An Award of Attorneys' Fees and Costs. .34

C.    THERE IS NO SIGNIFICANT DISPUTE AS TO SIGNIFICANT
ALLEGATIONS IN THE COMPLAINT ......................................................35

D.    DEFENDANTS ARE NOT UNFAIRLY PREJUDICED AS THEY HAVE
HAD AMPLE OPPORTUNITY TO DEFEND THE ALLEGATIONS AND
PRODUCE EVIDENCE AND DEFAULT WAS ENTERED BECAUSE OF
THEIR FAILURE TO DO SO .....................................................................36

E.    THE MONETARY RECOVERY IS NOT EXCESSIVE, OR
SPECULATIVE AND IS BASED ON INFORMATION FROM RECORDS
PREPARED BY DEFENDANTS ................................................................37

F.    A CLAIMS PROCESS SHOULD BE ESTABLISHED TO PROVIDE FOR
DISBURSEMENT OF THE PAGA FUNDS................................................39

IV.    CONCLUSION .........................................................................................39

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Aldapa v. Fowler Packing Co*, 323 F.R.D. 316 (E.D. Cal. 2018) ............................... 21

*Barbosa v. Cargill Meat Solutions Corporation*, 297 F.R.D. 432 (E.D. Cal. 2013) ....................... 35

*Culley v. Lincare Inc*., 236 F. Supp.3d 1184 (E.D. Cal. 2017) ........................................ 30

*Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325 (S.D.N.Y. 2009) ..................................... 16

*Doe v. D.M. Camp & Sons*, 624 F. Supp. 2d 1153 (E.D. Cal.CA 2008) ......................... 14

*Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480 (D. Md. 1982) ................................... 16

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ............................................. 13

*Ellison v. AutoZone Inc.*, No. 16–80182, 2017 WL 6048892 (9th Cir. Mar. 3, 2017) .................... 24

*Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 U.S. Dist. LEXIS 27249 (E.D. Cal. Feb. 24, 2017) ................................................................. 34

*Garnett v. ADT, LLC*, 139 F. Supp. 3d 1121 (E.D. Cal. 2015) ....................................... 22

*Geddes v. United Fin. Grp*., 559 F.2d 557  (9th Cir. 1977) ...................................... 13

*Gong-Chun v. Aetna, Inc.*, 2012 U.S. Dist. LEXIS 96828 (E.D. Cal. July 11, 2012) ..................... 35

*Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76 (E.D.N.Y. 2012) .................................. 16

*Hodgson v. Elm Hill Meats of Ky., Inc.*, 327 F. Supp. 1009 (E.D. Ky. 1971), *aff'd* 463 F.2d 1186 (6th Cir. 1972) ...................................................................... 17

*In re: Autozone, Inc.*, No. 3:10–md–02159–CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) . 24

*Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615 (S.D.N.Y. 2011) ........................ 16

*Mendoza v. Nordstrom, Inc*., 865 F.3d 1261 (9th Cir. 2017) .......................................... 26

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606 (9th Cir. 2016) ................................. 13, 37

*Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 10138 (E.D. Cal. 2015) ................................ 22

*Philip Morris U.S.A. Inc. v. Castworld Prods*., 219 F.R.D. 494 (C.D. Cal. 2003) ............. 34, 36, 37

*Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir.1997) ......................................... 16

*Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, slip op. at 11 (9th Cir. May 3, 2018) ..................... 22

*Valenzuela v. Giumarra Vineyards Corp.*, 619 F. Supp. 2d 985 (E.D. Cal. 2008) .................... 14, 19

### <u>States Cases</u>

*Amalgamated Transit Union v. Sup. Ct.*, 46 Cal. 4th 993 (2009) .................................... 30

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012)............................................. 19

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007)......................................................... 24

*Reynolds v. Bement*, 36 Cal.4th 1075 (2005) .................................................................................. 30

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112 (2012) .............................. 29, 30

## **Federal Statutes**

28 U.S.C. § 1331 ................................................................................................................................ 13

28 U.S.C. § 1367(a) ........................................................................................................................... 14

29 C.F.R. § 776.20(b) ........................................................................................................................ 16

29 C.F.R. §§ 500.60 ........................................................................................................................... 15

29 U.S.C. § 1831 ................................................................................................................................ 15

29 U.S.C. § 1832(a) ........................................................................................................................... 15

29 U.S.C. § 1854 ................................................................................................................................ 13

29 U.S.C. § 206 .................................................................................................................................. 16

29 U.S.C. § 206(a) ............................................................................................................................. 16

29 U.S.C. § 216 ............................................................................................................................ 16, 34

29 U.S.C. § 218(a) ............................................................................................................................. 16

29 U.S.C. §1854(c) ............................................................................................................................ 14

Fed. Rules Civ. Proc. 55(b)(2)........................................................................................................... 12

## **State Statutes**

Cal. Civ. Code § 3289 ........................................................................................................................ 18

Cal. Lab. Code § 1194 ................................................................................................................. 17, 18

Cal. Lab. Code § 1198.5 ..................................................................................................................... 25

Cal. Lab. Code § 201(a) ..................................................................................................................... 23

Cal. Lab. Code § 202 .................................................................................................................... 23, 28

Cal. Lab. Code § 203(a) ..................................................................................................................... 23

Cal. Lab. Code § 226.7 ................................................................................................................. 18, 19

Cal. Lab. Code § 226(a) ..................................................................................................................... 22

Cal. Lab. Code § 2699.3 ..................................................................................................................... 26

Cal. Lab. Code § 2699(f) ........................................................................ 27, 28, 30, 33

Cal. Lab. Code § 2802 ............................................................................................. 21

Cal. Labor Code § 1194.2 ....................................................................................... 17

Cal. Labor Code § 2699 ................................................................................... passim

Cal. Labor Code section 1174.5 ........................................................................ 28, 32

Cal. Labor Code section 226(e)(1) .......................................................................... 23

Cal. Labor Code section 558 ........................................................................... passim

## **Regulations**

Cal. Code Regs. tit. 8, § 11140 ...................................................................... 17, 18, 20

## I.      **INTRODUCTION**

This multi-party action alleges that several defendants acted in concert to hire and employ Plaintiffs and others to perform work as seasonal agricultural workers in and around Kern county in 2014 and 2015 and then violated various federal and state labor laws in connection with that employment including failing to pay all wages due, failing to provide timely meal periods, failing to provide complete wage statements and operating in 2015 as an unlicensed farm labor contractor. (Second Amended Complaint, Docket No. 7 ("SAC") Defendants, Kern County Cultivation, Inc., Gabriel Gallardo, Sylvia Esther Gallardo and Manuel Gallardo, ("Gallardo Defendants") all acted in the capacity as farm labor contractors providing workers who were employed under contracts between them and Defendants Nazar Kooner, Pawan Kooner and/or Hardeep Kaur ("Kooner Defendants") on land owned or operated by the Kooner Defendants. SAC ¶¶ 1, 12-14, 24. Plaintiffs brought this action on behalf of themselves (SAC Causes of Action 1-11 and 13) and as a representative action under the California Labor Law Private Attorney General Act, Cal. Labor Code §§ 2699, *et seq.* (PAGA) on behalf of an estimated 100 to 150 other aggrieved employees. SAC Twelfth Cause of Action.

The Gallardo Defendants filed an answer to the Second Amended Complaint  (Docket No. 52, March 22, 2017).  However, the answer as to all Gallardo Defendants was stricken as a discovery sanction against each Defendant and default entered as to each of them (Docket Nos. 76, 77, 10/30/2017 Order and Default entered against Kern County Cultivation, Inc.; and Docket Nos. 97, 98, 2/7/2018, Order and Default entered against Defendants Gabriel Gallardo, Sr., Silvia Gallardo, and Manuel Gallardo). In accordance with Judge Drozd's Order entered April 23, 2019, reopening law and motion, Plaintiffs bring this motion for entry of default judgement; as provided in Federal Rule of Civil Procedure 55(b)(2), as to Defendants Kern County Cultivation, Inc., Gabriel Gallardo, Sylvia Esther Gallardo and Manuel Gallardo

## II.   STATEMENT OF FACTS

The named Plaintiffs in this action worked in two separate crews in an agricultural operation that consisted of three or more total crews working under the direction and control of the Defendants.

### Plaintiffs Working in 2015 Are Not Paid All Wages Due; Not Provided  Timely or Full Meal and Rest Periods; Not Paid Premium Pay Compensation; Not Provided Wage Statements

*Crew One*

The first crew worked for Defendants spanning from March 30, 2015 to April 13, 2015. The first crew includes the following Plaintiffs: Lucaria Tenorio (See Declaration of Lucaria Tenorio In Support of Motion for Entry of Default Judgment, hereafter "Tenorio Dec."); Plaintiff Cristino Santiago (See Declaration of Cristino Santiago In Support of Motion for Entry of Default Judgment, hereafter "Cristino Santiago Dec."); Plaintiff Maria de Jesus (See Declaration of Maria de Jesus In Support of Motion for Entry of Default Judgment, hereafter "De Jesus Dec."); Plaintiff Carlos Pedro (See Declaration of Carlos Pedro In Support of Motion for Entry of Default Judgment, hereafter "Pedro Dec."); and, Plaintiff Artemio Santiago (See Declaration of Artemio Santiago In Support of Motion for Entry of Default Judgment, hereafter "Artemio Santiago Dec."). All named Plaintiffs who worked during March 30, 2015 to April 13, 2015 will hereafter be referred to as "Crew One." No members of Crew One worked during the 2014 season.

In 2015, Defendant Gabriel Gallardo hired Plaintiffs from Crew One to perform work as seasonal agricultural workers, working in Defendant Nazar Kooner's table grape fields. Tenorio Dec. ¶ 2-3; Cristino Santiago Dec. ¶ 2-3; De Jesus Dec. ¶ 2-3; Pedro Dec. ¶ 2-3; Artemio Santiago Dec. ¶ 2-3.  All named Crew One Plaintiffs worked for ten (10) days between April 2, 2015 to April 13, 2015, except for Artemio Santiago, who worked nine (9) days from April 3, 2015 to April 13, 2015. *Id.*

Crew One Plaintiffs estimate their crew was between 20 to 25 other people and that they worked about the same hours and days and took their breaks at the same time.   Tenorio Dec. ¶ 7; Cristino Santiago Dec. ¶ 7; De Jesus Dec. ¶ 7; Pedro Dec. ¶ 7; Artemio Santiago Dec. ¶ 7. The foreman was Defendant Manuel Gallardo and the supervisor was Defendant Gabriel Gallardo.

1  Tenorio Dec. ¶ 6; Cristino Santiago Dec. ¶ 6; De Jesus Dec. ¶ 6; Pedro Dec. ¶ 6; Artemio Santiago

2  Dec. ¶ 6.

3      Crew One Plaintiffs started working at approximately 7 a.m. in the grape fields, which were

4  owed or leased by Defendants Nazar Kooner and Hardeep Kaur. Tenorio Dec. ¶ 3, 8; Cristino

5  Santiago Dec. ¶ 3, 9; De Jesus Dec. ¶ 3, 8; Pedro Dec. ¶ 3, 8; Artemio Santiago Dec. ¶ 3, 8.  Their

6  first break was at approximately 9:00 a.m. and lasted approximately 10 to 15 minutes. Tenorio

7  Dec. ¶ 10; Cristino Santiago Dec. ¶ 10; De Jesus Dec. ¶ 9; Pedro Dec. ¶ 9; Artemio Santiago Dec. ¶

8  10.  Many workers used this time to eat but could not store their food in the fields.  Tenorio Dec. ¶

9  10; Cristino Santiago Dec. ¶ 10; De Jesus Dec. ¶ 10, 11; Pedro Dec. ¶ 9; Artemio Santiago Dec. ¶

10  10, 11.  The breaks were generally shorter than the required 10 minutes because Plaintiffs and other

11  workers had to walk back to their cars to get food and the walking back and forth could take 5 to 6

12  minutes or more. Tenorio Dec. ¶ 13; Cristino Santiago Dec. ¶ 13; De Jesus Dec. ¶ 12; Pedro Dec. ¶

13  12; Artemio Santiago Dec. ¶ 13.

14      The second break was given at approximately 12:00 p.m. and was for no more than 15

15  minutes. Tenorio Dec. ¶ 12; Cristino Santiago Dec. ¶ 12; De Jesus Dec. ¶ 11; Pedro Dec. ¶ 11;

16  Artemio Santiago Dec. ¶ 12. Again, workers walked back and forth from their cars, which could

17  take from 5 to 6 minutes. Tenorio Dec. ¶ 12; Cristino Santiago Dec. ¶ 12; De Jesus Dec. ¶12; Pedro

18  Dec. ¶ 12; Artemio Santiago Dec. ¶ 13.  Defendant Manuel Gallardo, Plaintiffs' foreman for Crew

19  One, told workers they would be compensated for the missed meal break, but they did not receive

20  such compensation. Tenorio Dec. ¶ 15,16; Cristino Santiago Dec. ¶ 15, 16; De Jesus Dec. ¶ 14, 15;

21  Pedro Dec. ¶ 14, 15; Artemio Santiago Dec. ¶ 15, 16. Work concluded each day at approximately

22  3:15 p.m. Tenorio Dec. ¶ 17; Cristino Santiago Dec. ¶ 17; De Jesus Dec. ¶ 16; Pedro Dec. ¶ 16;

23  Artemio Santiago Dec. ¶ 17.

24      Plaintiffs had to purchase tools that were essential for their work with Defendants but were

25  never reimbursed for such purchases. Plaintiff Tenorio spent an estimated $16.00 on shears, gloves

26  and glasses. Tenorio Dec. ¶ 19.  Plaintiff Cristino Santiago spent an estimated $12.00 on shears.

27  Cristino Santiago Dec. ¶ 19. Plaintiff de Jesus spent an estimated $13.00 on clippers, or shears, and

28

1    a ten pack of gloves. De Jesus Dec. ¶ 18. Plaintiff Pedro spent an estimated $16.00 on shears and

2    gloves. Pedro Dec. ¶ 17, 18. Plaintiff Artemio Santiago spent an estimated $11.00 on shears and

3    gloves. Artemio Santiago Dec. ¶ 18, 19.

4           On April 13, 2015, four of the Crew One Plaintiffs received $112.00 in cash as a partial

5    payment for their ten (10) days of work for Defendants.  Tenorio Dec. ¶ 20; Cristino Santiago Dec.

6    ¶ 20; De Jesus Dec. ¶ 19; Pedro Dec. ¶ 19.  On April 13, 2015, Plaintiff Artemio Santiago received

7    $74.00 in cash as a partial payment for his nine (9) days of work for Defendants.  Artemio Santiago

8    Dec. ¶ 20. They did not receive an itemized statement with their payment, nor any indication of

9    deductions or hours worked that the compensation was supposed to cover.  Tenorio Dec. ¶ 21;

10    Cristino Santiago Dec. ¶ 21; De Jesus Dec. ¶ 20; Pedro Dec. ¶ 20; Artemio Santiago Dec. ¶ 21.

11    Plaintiffs quit working for Defendants on April 13, 2015 after not receiving full wages.  They did

12    not receive any other payment other than the partial cash payments on April 13, 2015, despite

13    several attempts to recover payment from the foreman, Defendant Manual Gallardo.  Tenorio Dec. ¶

14    23, 24; Cristino Santiago Dec. ¶ 23, 24; De Jesus Dec. ¶ 22; Pedro Dec. ¶ 5, 22, 23; Artemio

15    Santiago Dec. ¶ 5, 23-24.

16    *Crew Two*

17           The second crew worked for Defendants spanning from May 11, 2015 to June 11, 2015.

18    The second crew includes the following Plaintiffs: Plaintiff Francisco Viera (See Declaration of

19    Francisco Viera In Support of Motion for Entry of Default Judgment, hereafter "Viera Dec.");

20    Plaintiff Maria Teresa (See Declaration of Maria Teresa In Support of Motion for Entry of Default

21    Judgment, hereafter "Teresa Dec."); Plaintiff Abel Miranda (See Declaration of Abel Miranda In

22    Support of Motion for Entry of Default Judgment, hereafter "Abel Miranda Dec."); Plaintiff Teresa

23    Miranda (See Declaration of Teresa Miranda In Support of Motion for Entry of Default Judgment,

24    hereafter "Teresa Miranda Dec."); Plaintiff Antonio Torres (See Declaration of Antonio Torres In

25    Support of Motion for Entry of Default Judgment, hereafter "Antonio Torres Dec."); Plaintiff

26    Lucia Torres (See Declaration of Lucia Torres In Support of Motion for Entry of Default

27    Judgment, hereafter "Lucia Torres Dec."); Plaintiff Irma Castaneda (See Declaration of Irma

28

1  Castaneda In Support of Motion for Entry of Default Judgment, hereafter "Castaneda Dec."); and,

2  Plaintiff Ezequiel Aguilar (See Declaration of Ezequiel Aguilar In Support of Motion for Entry of

3  Default Judgment, hereafter "Aguilar Dec."). All named Plaintiffs who worked during May 11,

4  2015 to June 11, 2015 will hereafter be referred to as "Crew Two."

5        Defendant Gabriel Gallardo hired Crew Two Plaintiffs to work as seasonal agricultural

6  workers in Defendant Nazar Kooner's table grape fields in 2015. Viera Dec. ¶ 3-4; Teresa Dec. ¶

7  2-3; Abel Miranda Dec. ¶ 2-3; Teresa Miranda Dec. ¶ 2-3; Antonio Torres Dec. ¶ 2-3; Lucia Torres

8  Dec. ¶ 2-3; Castaneda Dec. ¶ 3-4; Aguilar Dec. ¶ 2-4.

9        Plaintiffs worked approximately the same schedule each day but varied in the number of

10  total days they worked between May 11, 2015 and June 11, 2015: Plaintiff Viera worked for

11  twenty (20) days in 2015, from approximately May 11, 2015 to June 11, 2015. Viera Dec. ¶ 4;

12  Plaintiff Teresa worked for twenty (20) days in 2015, from approximately May 11, 2015 to June

13  11, 2015. Teresa Dec. ¶ 4; Plaintiff Abel Miranda worked for seven (7) days in 2015, from

14  approximately June 3, 2015 to June 11, 2015. Abel Miranda Dec. ¶ 3; Plaintiff Teresa Miranda

15  worked for three (3) days in 2015, from approximately June 3, 2015 to June 6, 2015. Teresa

16  Miranda Dec. ¶ 3; Plaintiff Antonio Torres worked for two (2) to three (3) days in 2015, from

17  approximately May 25, 2015 to June 10, 2015. Antonio Torres Dec. ¶ 5; Plaintiff Lucia Torres

18  worked between May and July in 2014 and worked for fifteen (15) days in 2015, from

19  approximately May 25, 2015 to June 10, 2015. Lucia Torres Dec. ¶ 4-5. Plaintiff Castaneda

20  worked between May and July in 2014 and worked for thirteen (13) days in 2015, from

21  approximately May 25, 2015 to June 10, 2015. Castaneda Dec. ¶ 4. Plaintiff Aguilar worked

22  between May and July in 2014 and worked for thirteen (13) days in 2015, from approximately May

23  25, 2015 to June 10, 2015. Aguilar Dec. ¶ 4.

24        Plaintiffs estimate that their crew size was between 20 to 35 other people and that they

25  worked about the same hours and days and took their breaks at the same time. Viera Dec. ¶ 7;

26  Teresa Dec. ¶ 6; Abel Miranda Dec. ¶ 6; Teresa Miranda Dec. ¶ 6; Antonio Torres Dec. ¶ 8; Lucia

27  Torres Dec. ¶ 8; Castaneda Dec. ¶ 6; Aguilar Dec. ¶ 6. The foreman over Crew Two in 2015 was

28

1 "Florentino" and the supervisor was Defendant Gabriel Gallardo.  Viera Dec. ¶ 7; Teresa Dec. ¶ 6;

2 Abel Miranda Dec. ¶ 8; Teresa Miranda Dec. ¶ 7; Antonio Torres Dec. ¶ ; Lucia Torres Dec. ¶ 8;

3 Castaneda Dec. ¶ 6; Aguilar Dec. ¶ 6.

4       Crew Two Plaintiffs reported for work at approximately 6 a.m. to sign in for work and be

5 present for *escuela* in the grape fields, which were owed or leased by Defendants Nazar Kooner

6 and Hardeep Kaur. Viera Dec. ¶ 3, 8; Teresa Dec. ¶ 3, 7; Abel Miranda Dec. ¶ 3, 9; Teresa Miranda

7 Dec. ¶ 3, 8; Antonio Torres Dec. ¶ 3, 10; Lucia Torres Dec. ¶ 3, 10; Castaneda Dec. ¶ 3, 7; Aguilar

8 Dec. ¶ 3, 7.  *Escuela* could last up to ten (10) minutes and happened every day or almost every day.

9 Viera Dec. ¶ 8; Teresa Dec. ¶ 7; Abel Miranda Dec. ¶ 9; Teresa Miranda Dec. ¶ 8; Antonio Torres

10 Dec. ¶ 10; Lucia Torres Dec. ¶ 10; Castaneda Dec. ¶ 7; Aguilar Dec. ¶ 7. The workday would end

11 at approximately 2:30 pm to 2:45 pm if workers started at 6:00 am, but workers would not leave

12 until 2:45 pm or later after a supervisor checked their work and let them know they could leave.

13 Viera Dec. ¶ 9; Teresa Dec. ¶8; Abel Miranda Dec. ¶10; Teresa Miranda Dec. ¶ 9; Antonio Torres

14 Dec. ¶ 11; Lucia Torres Dec. ¶ 11; Castaneda Dec. ¶ 8; Aguilar Dec. ¶ 8.

15       If the vines were wet, workers would wait around in the fields until 7:00 a.m. before

16 starting to work, though they would still report at 6:00 a.m. and receive *escuela* at 6:00 a.m. Viera

17 Dec. ¶ 10; Teresa Dec. ¶9; Abel Miranda Dec. ¶ 11; Teresa Miranda Dec. ¶ 10; Antonio Torres

18 Dec. ¶ 12; Lucia Torres Dec. ¶ 12; Castaneda Dec. ¶ 9; Aguilar Dec. ¶ 9.  If workers began at 7:00

19 a.m., they would then leave for the day between 3:30 p.m. to 3:45 p.m., depending on when their

20 work was checked out.  Viera Dec. ¶ 10. Teresa Dec. ¶ 8-9; Abel Miranda Dec. ¶ 11; Teresa

21 Miranda Dec. ¶ 10; Antonio Torres Dec. ¶ 12; Lucia Torres Dec. ¶ 12; Castaneda Dec. ¶ 9; Aguilar

22 Dec. ¶ 9.

23       Crew Two's first break was at approximately 9:00 a.m. and lasted approximately 10

24 minutes. Viera Dec. ¶ 11; Teresa Dec. ¶ 10; Abel Miranda Dec. ¶ 10; Teresa Miranda Dec. ¶ 11;

25 Antonio Torres Dec. ¶ 13; Lucia Torres Dec. ¶ 13; Castaneda Dec. ¶ 11; Aguilar Dec. ¶ 11.

26 Many workers used this time to eat, use the restroom, or get water but they had to walk out of the

27 fields to take their break.  Viera Dec. ¶ 12; Teresa Dec. ¶ 11; Abel Miranda Dec. ¶ 13; Teresa

28

Miranda Dec. ¶ 12; Antonio Torres Dec. ¶ 14; Lucia Torres Dec. ¶ 14; Castaneda Dec. ¶ 12; Aguilar Dec. ¶ 12. The breaks were generally shorter than the required ten (10) minutes because workers had to walk back to their cars or to access bathroom facilities and the walking back and forth could take 5 minutes or more. Viera Dec. ¶ 13; Teresa Dec. ¶ 11-12; Abel Miranda Dec. ¶ 13-14; Teresa Miranda Dec. ¶ 12-13; Antonio Torres Dec. ¶ 13; Lucia Torres Dec. ¶ 15; Castaneda Dec. ¶ 13; Aguilar Dec. ¶ 13.

The lunch break was given at approximately 12:00 p.m. and concluded at 12:30 p.m. Viera Dec. ¶ 14; Teresa Dec. ¶ 13; Abel Miranda Dec. ¶ 15; Teresa Miranda Dec. ¶ 14; Antonio Torres Dec. ¶ 16; Lucia Torres Dec. ¶ 16; Castaneda Dec. ¶ 14; Aguilar Dec. ¶ 14. Again, workers walked back and forth from their cars, which could take at least five (5) minutes, causing the breaks to be shorter than 30 minutes. Viera Dec. ¶ 15; Teresa Dec. ¶ 12; Abel Miranda Dec. ¶ 16; Teresa Miranda Dec. ¶ 15; Antonio Torres Dec. ¶ 17; Lucia Torres Dec. ¶ 17; Castaneda Dec. ¶ 15; Aguilar Dec. ¶ 15. Crew Two Plaintiffs did not receive any compensation for the missed or shortened rest breaks, nor the lunch breaks provided after the fifth hour of work. Viera Dec. ¶ 17; Teresa Dec. ¶ 16; Abel Miranda Dec. ¶ 18; Teresa Miranda Dec. ¶ 17; Antonio Torres Dec. ¶ 19; Lucia Torres Dec. ¶ 19; Castaneda Dec. ¶ 17; Aguilar Dec. ¶ 17.

Plaintiffs had to purchase tools that were essential for their work with Defendants but were never reimbursed for such purchases. Plaintiff Viera spent an estimated $40.00 to $60.00 on long and short handled shears, Viera Dec. ¶ 18, 19. Plaintiff Teresa spent an estimated $12.00 on shears and gloves. Teresa Dec. ¶ 18, 19; Plaintiff Abel Miranda spent an estimated $15.00 on shears and gloves. Abel Miranda Dec. ¶ 19-20. Plaintiff Teresa Miranda spent an estimated $15.00 on shears and gloves. Teresa Miranda Dec. ¶ 19-20. Plaintiff Antonio Torres spent an estimated $20.00 on clippers and gloves. Antonio Torres Dec. ¶ 18, 19. Plaintiff Lucia Torres spent an estimated $20.00 on clippers and gloves. Lucia Torres Dec. ¶ 20, 21. Plaintiff Castaneda spent an estimated $5.00 on gloves. Castaneda Dec. ¶ 18-20. Plaintiff Aguilar spent an estimated $5.00 on shears. Aguilar Dec. ¶ 18-20.

All Crew Two Plaintiffs, except Plaintiff Lucia Torres, quit work in 2015 after not receiving full payment for hours worked and meal and rest premiums. Viera Dec. ¶ 21; Teresa Dec. ¶ 20; Abel Miranda Dec. ¶ 4; Teresa Miranda Dec. ¶ 5; Antonio Torres Dec. ¶ 6; Castaneda Dec. ¶ 21; Aguilar Dec. ¶ 21. They made several attempts to recover payment from Defendant Gabriel Gallardo but never received any payment for their work from May to June in 2015. Viera Dec. ¶ 27-28; Teresa Dec. ¶ 26-27; Abel Miranda Dec. ¶ 25-27; Teresa Miranda Dec. ¶ 24-25; Antonio Torres Dec. ¶ 23, 25; Lucia Torres Dec. ¶ 23 – 24; Castaneda Dec. ¶ 28-29; Aguilar Dec. ¶ 28-29.

About a month or two after they quit, four Crew Two Plaintiffs submitted a claim to the Labor Commissioner against Defendants Nazar Kooner and Defendant Gabriel Gallardo: Plaintiff Abel Miranda received $535.50 in cash from Defendant Nazar Kooner, Abel Miranda Dec. ¶ 22; Plaintiff Teresa Miranda received $229.50 in cash from Defendant Nazar Kooner. Teresa Miranda Dec. ¶ 21; Plaintiff Irma Castaneda submitted a claim at the same time as her partner, Plaintiff Ezequiel Aguilar, but received a smaller payout than Plaintiff Aguilar, despite working the same hours and days and did not include all her wages due or the meal and rest premiums she was entitled to receive. Castaneda Dec. ¶ 25, 27; Plaintiff Aguilar received $800.00 in cash but the amount did not cover all his hours worked or meal and rest premiums he was entitled to receive. Aguilar Dec. ¶ 25-26, 27.

None of the Crew Two Plaintiffs received any itemized pay statement detailing hours worked, meal premiums they were entitled to, or hours worked. Viera Dec. ¶ 26; Teresa Dec. ¶ 25; Abel Miranda Dec. ¶ 23; Teresa Miranda Dec. ¶ 22; Castaneda Dec. ¶ 26; Aguilar Dec. ¶ 25-26.

**Plaintiffs Working in 2014 Suffer the Same Conditions**

Five Plaintiffs worked for Defendants in 2014: Plaintiff Francisco Viera, Viera Dec. ¶ 4; Plaintiff Antonio Torres, Antonio Torres Dec. ¶ 2,4 ; Plaintiff Lucia Torres,  Lucia Torres Dec. ¶ 2,4.  Plaintiff Aguilar, Aguilar Dec. ¶ 4; Plaintiff Irma Castaneda Dec. ¶ 4.  Records obtained from Defendants confirm that they were each employed for one or more pay periods during 2014. Rice. Dec. Exh. 3.   The practices relating to meal and rest periods, starting time and stopping time, and

1  the types of wage statements provided were all the same in 2014. (See 2015 summary references

2  above).

3  **Other Aggrieved Employees Worked for Defendants Under the Same Conditions**

4        The conditions that Plaintiffs were subjected to were also applied to the other members of

5  their crews, including those related to the meal and rest periods, the lack of compensation for late

6  or shortened meal periods, starting and stopping time, and the types of wage statements provided.

7  (See summary references above).  Additionally, testimony provided by foremen for other crews

8  confirmed that the meal and rest period and wage statement practices were consistent for all crews

9  employed by Defendants.  Rice Dec. Exh. 9, Deposition of Blanca Estella Rosales Deposition,

10  October 21, 2016, hereafter "Rosales Depo." pp. 66:17-17:20;  Rice Dec. Exh. 8, Deposition of

11  Poinciano Mejia on November 2, 2016, hereafter "Mejia Depo", pp. 38:7-39:19; 45:13.  The

12  limited work records provided for 2014 and 2015 show a work schedule consistent with Plaintiffs'

13  testimony regarding the beginning of the day.  Rice Dec. Exh. 4, Bates Nos. KCCI 000026-42. The

14  limited payroll records provided by Defendants, consistent with Plaintiffs' testimony, show no

15  payments for missed meal or rest periods.  Rice Dec. Exh. 3a, 3b, 3c.

16        At issue in the instant action are vineyards owned or operated by Defendants Nazar and

17  Pawan Kooner, and Hardeep Kaur ("Kooner Vineyards").  Plaintiff and other current or former

18  employees worked at the Kooner Vineyards located in Kern County where the wage dispute arose.

19  Defendants grow table grapes and raisins at the Kooner Vineyards. (See, Deposition of Nazar

20  Singh Kooner on March 20, 2017, hereafter "Nazar Kooner Depo. Part 2").

21

22  **Defendants Gabriel Gallardo, Manuel Gallardo, Silvia Esther Gallardo and Kern**
   **County Cultivation, Inc., in Their Capacity as Farm Labor Contractors, Hired**

23  **Plaintiffs and Class Members to Work at Defendant Kooners' Vineyards in 2014 and**
   **2015**

24        Defendant Gabriel Gallardo began providing farm labor contracting ("FLC") services to

25  Defendant Nazar Kooner and his family in 1997.  See, Gabriel Gallardo Deposition on December

26  14, 2017 (hereafter, "Gabriel Gallardo Depo"), p. 22:12-24. Defendant Gabriel Gallardo held his

27  own FLC license from approximately the 1990's to 2001. *Id.* at 22:19-24.  Since approximately

28

2001, Defendant Gabriel Gallardo is no longer eligible to hold an FLC license, so he has continued operating as an FLC using licenses obtained under the name of his children.  Defendant Gabriel Gallardo has four children, listed from oldest to youngest: Viridiana Gallardo, Gabriel Gallardo Jr., Fabian Gallardo and Silvia Esther Gallardo.  Viridiana Gallardo held the family's FLC from approximately 2001 to 2005 under the name "West Valley Farms, LLC." *Id.* at p. 25:17-25; 26:1-6. Gabriel Gallardo, Jr. then held the family's FLC from approximately 2005 until 2010 under the name "West Valley Farms, LLC."  *Id.* at p. 26:7-25.  Fabian Gallardo was the next adult child to hold an FLC, from approximately 2011 – 2012, under the name "South Valley Ag." *Id.* at p. 27:4-12; 35:1-8.  Lastly, Defendant Gabriel Gallardo's youngest daughter, Defendant Silvia Esther Gallardo, obtained her FLC license in 2014 under the name "Kern County Cultivation, Inc." Rice Dec. Exh. 4, Bates No ; Gabriel Gallardo Depo p. 48:9-15.  Defendant Gabriel Gallardo has been a supervisor or manager for each child's FLC business. *Id.* at p. 36:25; p.37-38.

Defendant Silvia Esther Gallardo, as the president and CEO of Kern County Cultivation, Inc, provided FLC services to Kooner Vineyards from May 15, 2014 through November 17, 2014, when her license expired.  Rice Dec. Exh. 5, Silvia Esther Gallardo Deposition on December 13, 2017, hereafter "Silvia Gallardo Depo," p. 30: 15-25; 31:1-9, Exh. 33.

Defendant Gabriel Gallardo listed himself as Operations Manager on invoices submitted to Kooner Vineyards beginning in 2015.  Rice Dec. Exh. 4, Bates Nos. 022-057, 2015 invoices from Gabriel M. Gallardo to Pawan Farms for farm labor services performed at Redbank vineyard and the Rancho and Sycamore location dated hereafter "Invoices".  The Invoices for the wage claim period in 2015 detail hours worked based on the number of workers provided by Defendant Gabriel Gallardo to Kooner Vineyards. *Id.* Checks paid to Defendant Gabriel Gallardo from Pawan Kooner Farms in 2015 were made out to "Kern County Cultivation, Inc. or Gabriel Gallardo."  Rice Dec. Exh. 4, Bates Nos. 014-15, Checks from Pawan Kooner Farms to Kern County Cultivation, Inc. or Gabriel Gallardo, hereafter "2015 Labor Checks".  Silvia Esther Gallardo denied involvement in any agricultural activities as an FLC or otherwise for Defendant Nazar Kooner after her license

expired on November 17, 2014 and denies that Kern County Cultivation, Inc. was an active

corporation after her license expired. Silvia Gallardo Depo, pp. 78:5-25;79:79:1-8, 19-25; 80:1-5.

Despite the license expiring, Defendant Gabriel Gallardo continued to provide FLC services

to Kooner vineyards in 2015 during the wage claim period and submit regular invoices to

Defendant Nazar Kooner for crew labor. (Invoices dated April 6, 2015; April 7, 2015; April 13,

2015; April 14, 2015; April 29, 2015; May 4, 2015; May 11, 2015; May 17, 2015, May 18, 2015;

and, May 21, 2015). All Plaintiffs understood Defendant Gabriel Gallardo to be a supervisor.

Tenorio Dec. ¶ 6; Cristino Santiago Dec. ¶ 6; De Jesus Dec. ¶ 6; Pedro Dec. ¶ 6; Artemio Santiago

Dec. ¶ 6; Viera Dec. ¶ 7; Teresa Dec. ¶ 6; Abel Miranda Dec. ¶ 8; Teresa Miranda Dec. ¶ 7;

Antonio Torres Dec. ¶ ; Lucia Torres Dec. ¶ 8; Castaneda Dec. ¶ 6; Aguilar Dec. ¶ 6.

### Bakersfield Labor Commissioner Receives Numerous Complaints About Labor Code Violations

In 2014 and 2015 multiple complaints were filed against Gabriel Gallardo, Kern County

Cultivation, Inc.  Manuel Gallardo and Nazar Kooner.  Rice Dec. Exh. 4, Bates Nos. KCCI

0000152-275).  On May 27, 2015, a deputy from the Bakersfield Department of Industrial

Relations, Division of Labor Standards Enforcement (hereafter, "Bakersfield DLSE") visited

Kooner Vineyards at Sycamore and Rancho Road in Arvin after receiving a referral from the Wage

Claim Unit  which resulted in a citation for 113 violations of Cal. Labor Code Section 226(a) for

the period of March 1, 2015 to June 27, 2015, for a total of $28,500, and a citation for a violation

of Cal. Labor Code Section 1299 for failing to have a valid permit on file for employing a minor.

*Id.* at 0000276-290-300.  Defendants Nazar Kooner and Gabriel Gallardo were found jointly and

severally liable for the Citation amounts and the decision was affirmed on appeal on September 28,

2015 at Bakersfield DLSE.  *Id.*

### Defendants Kern County Cultivation Inc, Manuel Gallardo and Gabriel Gallardo Failed to Respond to Plaintiffs' Request for Personnel and Payroll Records

On May 4, 2015, Counsel for Plaintiffs sent a letter to Gabriel Gallardo requesting

personnel and payroll records under Cal. Labor Code 226(a) and Cal. Labor Code 1198.5. Rice

Dec., Exhibit 14.  In response to that request Defendants Silvia Esther Gallardo and Kern County

1    Cultivation, Inc. sent on behalf of Plaintiffs Lucaria Tenorio, Cristino Santiago, Carlos Pedro,

2    Maria de Jesus, and Artemio Santiago, Defendant Silvia Esther Gallardo responded in a letter on

3    Kern County Cultivation, Inc. letterhead saying that the company was nonoperational during the

4    dates of employment records requested.  On July 15, 2015, Counsel for Plaintiffs sent a letter to

5    Defendants Nazar Kooner, Kern County Cultivation, Inc, Manuel Gallardo, and Gabriel Gallardo

6    requesting personnel and payroll records under Cal. Labor Code 226(a) and Cal. Labor Code

7    1198.5.  Rice Dec. Exh. 16.     Defendants also failed to produce payroll or personnel records in

8    response to the July 15, 2015 Records Request.  In fact, as later discovered, Defendants did not

9    maintain those records in a manner that complied with Cal. Labor Code § 226, or Cal. Labor Code

10   § 1174.  Rice Dec. Exhs. 1, 3a, 3b, 3c.

11                 **Plaintiffs Serve Notice of Labor Law Violations On Defendants and the Labor and Workforce Development Agency.**

12                 On July 17, 2015 and then again on August 27, 2015 Plaintiffs, through their counsel, sent

13   notice of California Labor law violations to Defendants Kern County Cultivation, Inc. Gabriel

14   Gallardo, Manuel Gallardo and Kern County Cultivation, Inc.; and the California Labor and

15   Workforce Development Agency (LWDA)  Rice Dec. Exhs. 12, 13.  The notices described the

16   facts and theories supporting their claim that Defendants had violated labor laws both with respect

17   to Plaintiffs and other aggrieved employees.  Defendants did not respond to those notices.  The

18   Labor and Workforce Development Agency did not advise Plaintiffs that it was undertaking an

19   investigation of the violations alleged.  Rice Dec. ¶¶

20   **III.    ARGUMENT**

21                 Plaintiff are entitled to entry of judgment and damages, penalties and interest as they have

22   followed the procedures established in Fed. Rules Civ. Proc. 55(b)(2) and established a reasonable

23   basis for damages and penalties claimed by Plaintiffs, individually, and on behalf of the other

24   aggrieved employees.

25

26

27

28

**A.      IT IS WITHIN THE SOUND DISCRETION OF THIS COURT TO ENTER JUDGMENT AGAINST THE GALLARDO DEFENDANTS.**

Plaintiffs are entitled to entry of default judgment against Defendants based the allegations in the Second Amended Complaint, which are assumed to be true based on Defendants' default. *Geddes v. United Fin. Grp*., 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."), *accord*,  *NewGen*, *LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016)  and because Plaintiffs have presented a  reasonable estimate of damages through declarations of the Plaintiffs and a summary of evidence regarding each of the causes and claims for which Plaintiffs seek recovery. *NewGen,* 840 F.3d at 617. (upholding default judgment of $1.48 mil. based on detailed declaration regarding damages).

In determining whether default judgement should enter this court may consider (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). Under this standard Plaintiffs' motion should be granted.


**B.      EACH OF THE PLAINTIFFS' CAUSES OF ACTION ARE ADEQUATELY PLEADED AND ARE MERITORIOUS.**

No procedural challenges were made to any of the Plaintiffs' causes or claims by any of the Defendants.  The court has subject matter jurisdiction over Plaintiffs' claims under the Migrant and Seasonal Worker Protection Act (AWPA) (First Cause of Action) by operation of 28 U.S.C. § 1331 and 29 U.S.C. § 1854, and supplemental jurisdiction over Plaintiffs' state claims because they all

arise from Plaintiffs' employment with Defendants in 2014 and 2015 and are based on the same facts and circumstances. 28 U.S.C. § 1367(a).

>    1.   Defendants Violated Plaintiffs' Rights as Seasonal
>         Agricultural Workers and They Are Entitle to Recover
>         Liquidated Damages for those Violations. (First Cause of
>         Action)

Each Defendants was an agricultural employer or farm labor contractor (SAC ¶¶ 8, 9, 10, 11, and was required to, but failed to comply with the AWPA. Plaintiffs' testimony and the records submitted demonstrate that they each suffered a denial of rights guaranteed by the Agricultural Worker Protection Act (AWPA). 29 U.S.C. §1854(c) provides that employers are liable for actual damages or statutory damages of up to $500 per plaintiff, per violation of the protections afforded by AWPA.  These damages may be recovered even if Plaintiffs' recover unpaid wages due through their state cause of action. *Doe v. D.M. Camp & Sons*, 624 F. Supp. 2d 1153, 1174 (E.D. Cal.CA 2008).

a) Violation of the Working Arrangements (29 U.S.C. § 1832(c); 29 C.F.R. § 500.72).  29 U.S.C. § 1832 requires compliance with working arrangements which include a guarantee that the employer will comply with all state and federal statutes and regulations designed to protect agricultural workers communicated to the employees. *Valenzuela v. Giumarra Vineyards Corp.*, 619 F. Supp. 2d 985, 990 (E.D. Cal. 2008) (*Valenzuela I*. This includes worker protection standards communicated to employees directly or through "an accepted custom or practice that the employer enforces and the employee follows can also qualify as an implicitly communicated term." *Id.* at 993. Plaintiffs allege that meal and rest period requirements were communicated to Plaintiffs and through Wage Order postings. (SAC ¶¶ 27(b), 45-49).  The Wage Order requires that meal periods be provided after a work period of not more than 5 hours of work.  See Wage Order 14, Rice Dec. Exh. 17.  Defendants began work before 7:00 a.m. and often started at 6:00 or 6:30, but were provided the meal period regularly at 12:00 noon, in the sixth or seventh hour of the work day therefore violating the working arrangements as to each Plaintiff.  Tenorio Dec. ¶ 3, 8; Cristino

1 Santiago Dec. ¶ 3, 9; De Jesus Dec. ¶ 3, 8; Pedro Dec. ¶ 3, 8; Artemio Santiago Dec. ¶ 3, 8.; Viera

2 Dec. ¶ 3, 8, 10; Teresa Dec. ¶ 3, 7,9; Abel Miranda Dec. ¶ 3, 9, 11; Teresa Miranda Dec. ¶ 3, 8, 10;

3 Antonio Torres Dec. ¶ 3, 10, 12; Lucia Torres Dec. ¶ 3, 10, 12; Castaneda Dec. ¶ 3, 7, 9; Aguilar

4 Dec. ¶ 3, 7, 9. Mejia Dep p. 44:1-17   Rosales Dep. pp. 35:1-15, 100:9-101:11. This working

5 arrangements violation occurred each day that Plaintiffs worked, but for the purpose of calculating

6 statutory damages Plaintiffs seek only one $500.00 damage award, per Plaintiff.   Rice, Dec.

7 Summary Exh. 19, Column 15, for a total amount of 6,000.00.

8 　　　　b) Violation of the record keeping requirements.  (29 U.S.C. § 1831; 29 C.F.R. §§ 500.60

9 (a) and 500.80 (c)).  Defendants failed to maintain records of hours worked or piece work units

10 earned, violating 1831(c)(1).  This is demonstrated by the limited payroll records produced by the

11 Gallardo Defendants.  Rice Dec. Exh. 3a, 3b, and 3c. which include no record of hours worked or

12 piecework units earned.   Defendants also failed to provide wage statements to Plaintiffs in

13 violation of 1831(c)(2). SAC ¶¶ 22; 27(c);  Rosales Depo. pp. 66:5-69:20; Mejia Depo. pp. 38:4-

14 39:22.  This fact is not disputed.  Although these are discrete obligations and violations for each

15 pay period, Plaintiffs only seek one award of statutory damages of $500.00 per plaintiff for the

16 violations of section 1831(c)(1) and one award of statutory damages of $500.00 per plaintiff for the

17 violations of section 1831(c)(2).   Rice Dec. Summary Exh. 19, Column 17, for a total amount of

18 $6,000.00.

19 　　　　c) Violation of the wage payment requirements (29 U.S.C. § 1832(a)). AWPA mandates

20 that: "Each farm labor contractor, agricultural employer, and agricultural association which

21 employs any seasonal agricultural worker shall pay the wages owed to such worker when due."

22 Plaintiffs were not paid the wages due them while they were working, or upon termination. (SAC

23 ¶¶ 1:13-21, 22, 27(c)).  These violations occurred at each pay period.  However, Plaintiffs seek

24 only one maximum statutory damages award, per plaintiff for violation of 1832(a).  Rice Dec.

25 Summary Exh. 19 Column 18, for a total amount of $6,000.00.

26

27

28

2.      Defendants Failed to Pay Minimum Wages in Violation of

the FLSA (Second      Cause of Action)

Plaintiffs were not paid for any wages for some of the hours they worked.  SAC ¶¶ 1:13-22, 22, 38.  This constitutes a violation of 29 U.S.C. § 206 giving rise to a cause of action under 29 U.S.C. § 216.  An employer must pay the minimum wage to each employee who in any workweek engages in commerce or production of goods for commerce, or is employed by an enterprise so engaged.  29 U.S.C. § 206(a).  The production of goods within the meaning of the statute includes the production of agricultural goods such as table grapes in which Plaintiffs were engaged on behalf of Defendants.  29 C.F.R. § 776.20(b).  The minimum wage due to employees is the state minimum wage if it exceeds the federal minimum wage. See 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . ."); see also Cal. Lab. Code § 1182.12 (setting state minimum wage).  "Where an employer fails to maintain adequate records of his employees' compensable time as required by the FLSA, a plaintiff employee must produce only 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 331 (S.D.N.Y. 2009) (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir.1997).  Damages for minimum wage violations are calculated by determining the difference between the amount the minimum wage requirements guarantee and the total amount of wages received on a weekly basis. In short, the employee is entitled to an amount equal to the difference between what he or she was actually paid for the period in question and what he or she should have been paid for that period. See *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012); *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 624-626 (S.D.N.Y. 2011).

Plaintiffs are entitled to all unpaid sums for the labor they performed, pursuant to the FLSA.  *See Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 489 (D. Md. 1982); *Hodgson v. Elm Hill Meats of Ky., Inc.*, 327 F. Supp. 1009 , 1016 (E.D. Ky. 1971), *aff'd* 463 F.2d 1186 (6th Cir.

1  1972) (employee is entitled to an amount equal to the difference between what he or she was

2  actually paid for the period in question and what he or she should have been paid for that period).

3  Plaintiffs are entitled under the FLSA to payment of wages at the rate of $7.25 per hour. [1]  In

4  addition to unpaid wages, Plaintiffs are entitled to interest on wages, attorney's fees and cost of

5  suit.

6          3.     Defendants Failed to Pay Minimum Wages in violation of the

7              California Labor     Code (Third Cause of Action)

8       Plaintiffs are entitled to compensation for all hours worked at the minimum wage under

9  California law.  Cal. Lab. Code § 1194.  Hours worked is defined in Wage Order 14 as all "the time

10  during which an employee is subject to the control of an employer, and includes all the time the

11  employee is suffered or permitted to work, whether or not required to do so."  Cal. Code Regs. tit.

12  8, § 11140.  Plaintiffs performed labor in 2014 and 2015 for which they received no wages.  In

13  2015, Plaintiffs worked several days and even workweeks without any compensation whatsoever.

14  SAC ¶ 22, 37-38, Tenorio Dec. ¶ 23, 24; Cristino Santiago Dec. ¶ 23, 24; De Jesus Dec. ¶ 22;

15  Pedro Dec. ¶ 5, 22, 23; Artemio Santiago Dec. ¶ 5, 23-24; Viera Dec. ¶ 27-28; Teresa Dec. ¶ 26-

16  27; Abel Miranda Dec. ¶ 25-27; Teresa Miranda Dec. ¶ 24-25; Antonio Torres Dec. ¶ 23, 25; Lucia

17  Torres Dec. ¶ 23 – 24; Castaneda Dec. ¶ 28-29; Aguilar Dec. ¶ 28-29.   In addition, even during

18  those periods when Plaintiffs received pay, their compensation did not cover all hours worked.  *Id.*

19       Plaintiffs are entitled to the difference between the amount earned and the amount paid.

20  Rice Dec. Summary Exh. 19, Columns 7, 8.  Furthermore, under Cal. Labor Code § 1194.2, they

21  are entitled to liquidated damages in an amount equal to the unpaid wages.  Cal. Lab. Code §

22  1194.2 ("an employee shall be entitled to recover liquidated damages in an amount equal to the

23  wages unlawfully unpaid and interest thereon.")   Rice Dec. Summary Exh. 19, Column 9

24  (liquidated damages).   Total Unpaid Wages due for all Plaintiffs for 2014 and 2015 is $6,000.50,

25  _____

26  [1] Because the California minimum wage rate in effect in 2014 and 2015 was higher than the federal
minimum wage, Plaintiffs have not performed separate calculations of the federal minimum wages

27  and liquidated damages due.  Both of those amounts are subsumed by the California minimum
wages and liquidated damages due under Cal. Labor Code § 1194.2

28

1   and liquidated damages of $9,571.50.  The difference in amounts reflects the fact that some

2   Plaintiffs were paid minimum wages due months later.  However, liquidated damages still apply at

3   the full unpaid minimum wage rates.

4         Plaintiffs may also be awarded interest and. attorney's fees and cost of suit.  Cal. Lab. Code

5   § 1194. Interest, including interest on unpaid premium compensation is calculated at the rate of

6   10% per annum, pursuant to 218.6 and Cal. Civ. Code § 3289.  Rice Dec. ¶ 22(d), Summary Exh.

7   19 Column 10A.  Total interest due for all Plaintiffs amounts to $5,369.55.

8

9            4.      <u>Defendants Failed to Provide Timely and Complete Meal and</u>

10                  <u>Rest Periods or Pay Additional Wages in Lieu Thereof in</u>

11                  <u>Violation of Cal. Labor Code § 226.7 (Fourth Cause of</u>

12                  <u>Action)</u>

13       a.   <u>Compensation Owed for Late Meal Periods</u>

14   The meal period provision of the IWC Wage Orders states:

15

16   Every employer shall authorize and permit all employees after a work period of not more
    than five (5) hours to take a meal period of not less than thirty (30) minutes, except that

17   when a work period of not more than six (6) hours will complete the day's work, the meal
    period may be waived by mutual consent of employer and employee. Unless the employee

18   is relieved of all duty during a thirty (30) minute meal period, the meal period shall be
    considered an "on duty" meal period and counted as time worked. An "on duty" meal

19   period shall be permitted only when the nature of the work prevents an employee from
    being relieved of all duty and when by written agreement between the parties an on- the-job

20   paid meal period is agreed to. Cal. Code Regs. tit. 8, § 11140.

21

22   Cal. Labor Code § 226.7 is the enforcement mechanism for this right, and provides that:

23   (c) If an employer fails to provide an employee a meal or rest or recovery period in
    accordance with a state law, including, but not limited to, an applicable statute or applicable

24   regulation, standard, or order of the Industrial Welfare Commission, the Occupational
    Safety and Health Standards Board, or the Division of Occupational Safety and Health, the

25   employer shall pay the employee one additional hour of pay at the employee's regular rate
    of compensation for each workday that the meal or rest or recovery period is not provided.

26

27

28

Cal. Lab. Code § 226.7. Failure to comply with the meal period requirement entitles employees to a meal period premium of one additional hour of pay. *Id.*; *see also Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1099 (E.D. Cal. 2009) (*Valenzuela II*) (holding that under the applicable meal period regulations, employers are required at minimum to offer employees a meal period after a work period of five hours).   The California Supreme Court has interpreted the meal period provisions of Wage Order and Labor Code as requiring employers to relieve employees of all duty for at least 30 minutes for meal periods, and to do after the first five hours of work. In *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), the court construed similar language in Wage Order 5 which states that "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . " and observed that  "This provision could    be interpreted as requiring employers either to provide a meal break after no more than five hours of work in a day, absent waiver, or simply to provide a meal break at any point in scheduled shifts that exceed five hours." *Id.* at 1041.  The court concluded that '[t]he first interpretation is the correct one: the statute requires a first meal period no later than the start of an employee's sixth hour of work." *Id.*

Likewise here, Plaintiffs and other current or former employees were entitled to have a full 30 minute meal period that began at the <u>beginning</u> of their sixth hour of work.  That did not occur.

Plaintiffs Tenorio, Artemio Santiago, Cristino Santiago, Maria de Jesus, Carlos Pedro and members of their crews were given a break at 12:00 noon of not more than 15 minutes. Tenorio Dec. ¶ 12; Cristino Santiago Dec. ¶ 12; De Jesus Dec. ¶ 11; Pedro Dec. ¶ 11; Artemio Santiago Dec. ¶ 12.

Plaintiffs, Antonio Torres, Lucia Torres, Ezequiel Aguilar, Irma Castaneda, Abel Miranda, Teresa Miranda, Francisco Viera, Maria Teresa, and their crews sometimes received 30 minutes, but waited up to an additional hour beyond the beginning of the  sixth hour to receive their meal periods because they started at 6:00 a.m. or 6:30 a.m. Viera Dec. ¶ 3, 8, 14; Teresa Dec. ¶ 3, 7, 13; Abel Miranda Dec. ¶ 3, 9, 15; Teresa Miranda Dec. ¶ 3, 8, 14; Antonio Torres Dec. ¶ 3, 10, 16; Lucia Torres Dec. ¶ 3, 10, 16; Castaneda Dec. ¶ 3, 7, 14; Aguilar Dec. ¶ 3, 7, 14.  Workers in

1    Torres crew  were required to report to work as early as 10 minutes (on average) before 6:00 a.m.

2    and the meal period was always scheduled at 12 noon—well into the sixth  hour of work.  Mejia

3    Depo. p. 44:1-17   Rosales Depo. pp. 35:1-15, 100:9-101:11.   Further, they were not relieved of

4    duty for a full 30 minutes because they had to clean up and walk to a suitable break area outside the

5    rows where they were tending to grape vines, and this took five minutes on average.  Since workers

6    were required to be back in the rows working exactly upon the expiration of thirty minutes,

7    workers had to cut their meal breaks even shorter in order to be back at the work area at 12:30 p.m.

8    This also took approximately five to six minutes each way and shortened the off-duty period to

9    about 20 minutes. Viera Dec. ¶ 15; Teresa Dec. ¶ 12; Abel Miranda Dec. ¶ 16; Teresa Miranda

10   Dec. ¶ 15; Antonio Torres Dec. ¶ 17; Lucia Torres Dec. ¶ 17; Castaneda Dec. ¶ 15; Aguilar Dec. ¶

11   15. Plaintiffs are each entitled to an additional hour of premium pay pursuant to Cal. Labor Code

12   section 226.7 because they were not permitted to take timely meal periods and/or were denied meal

13   periods of at least 30 minutes without duty.  Plaintiffs each worked in crews of 25 or more workers

14   who were subject to the same practices in 2014 and 2015.   The amounts due to each Plaintiff are

15   shown in Column 5 and Column 5A.  The total amount due all Plaintiffs for both years is $

16   $1,818.00.

17           b.   Compensation for Shortened Rest Periods.

18       A similar analysis applies to rest breaks.  Wage Order 14 provides that:

19
20       Every employer shall authorize and permit all employees to take rest periods, which
         insofar as practicable shall be in the middle of each work period. The authorized rest
         period time shall be based on the total hours worked daily at the rate of ten (10) minutes
21       net rest time per four (4) hours or major fraction thereof.

22
23   8 Cal. Code Regs. tit. 8 § 11140.   Employees are entitled to paid rest breaks of at least 10 minutes

24   off duty at a rate of four rest periods every four hours. *Brinker Restaurant*, 53 Cal.4th at 1028.  If

25   the employer fails to provide a rest break the employee is entitled to a premium pursuant to Cal.

26   Labor Code section 226.7(c).

27       Plaintiffs were denied rest breaks of at least 10 minutes because the time necessary to walk

28   to and from the location where they could take their rest period was counted against their break

1  time.   Viera Dec. ¶ 13; Teresa Dec. ¶ 11-12; Abel Miranda Dec. ¶ 13-14; Teresa Miranda Dec. ¶

2  12-13; Antonio Torres Dec. ¶ 13; Lucia Torres Dec. ¶ 15; Castaneda Dec. ¶ 13; Aguilar Dec. ¶ 13;

3  Tenorio Dec. ¶ 13; Cristino Santiago Dec. ¶ 13; De Jesus Dec. ¶ 12; Pedro Dec. ¶ 12; Artemio

4  Santiago Dec. ¶ 13.  Plaintiffs are entitled to a rest-break premium because their one break for

5  shifts greater than six hours was shortened. The amounts due Plaintiffs for the meal and rest period

6  violations are calculated at the rate of one hour for each violation, per day, at their regular rate of

7  pay of $9.00 per hour.   Rice. Dec. Summary Exh. 19, Columns 4 and 4A.  The total amounts due

8  all Plaintiffs for both years is $1,818.00.

9

10              5.      Defendants Failed to Indemnify Plaintiffs for Necessary

11                      Tools and Equipment in Violation of Cal. Labor Code § 2802.

12                      (Fifth Cause of Action)

13          Cal. Labor Code § 2802 requires employers to indemnify employees "for all necessary

14  expenditures or losses incurred by the employee in direct consequence of the discharge of his or

15  her duties, or of his or her obedience to the directions of the employer . . ." Cal. Lab. Code § 2802.

16  Plaintiffs purchased clippers and gloves to perform their agricultural work, and found it necessary

17  to make such purchases because these tools were not provided by Defendants.  Tenorio Dec. ¶ 19;

18  Cristino Santiago Dec. ¶ 19; De Jesus Dec. ¶ 18; Pedro Dec. ¶ 17, 18; Artemio Santiago Dec. ¶ 18,

19  19; Viera Dec. ¶ 18, 19; Teresa Dec. ¶ 18, 19; Abel Miranda Dec. ¶ 19-20; Teresa Miranda Dec. ¶

20  19-20; Antonio Torres Dec. ¶ 18, 19; Lucia Torres Dec. ¶ 20, 21; Castaneda Dec. ¶ 18-20; Aguilar

21  Dec. ¶ 18-20. Rosales Depo. p. 44:8-23.  Pursuant to Section 2802 of the Labor Code, Plaintiffs are

22  entitled to reimbursement for the expense of purchasing their own clippers and gloves.  *See Aldapa*

23  *v. Fowler Packing Co*, 323 F.R.D. 316, 352 (E.D. Cal. 2018) (finding that farm workers who

24  purchased clippers to harvest grapes and mandarins were entitled to reimbursement when the

25  purchase of those tools was necessary for the job).

26          Here, Plaintiffs are entitled to reimbursement for tools that were necessary to carry out their

27  agricultural work.   Plaintiffs are also entitled to recover attorney's fees and cost of suit.  Cal.

28

Labor Code § 2802(c).  Damages for this violation are based upon the out of pocket expenses of Plaintiffs.  Tenorio Dec. ¶ 19; Cristino Santiago Dec. ¶ 19; De Jesus Dec. ¶ 18; Pedro Dec. ¶ 17, 18; Artemio Santiago Dec. ¶ 18, 19; Viera Dec. ¶ 18, 19; Teresa Dec. ¶ 18, 19; Abel Miranda Dec. ¶ 19-20; Teresa Miranda Dec. ¶ 19-20; Antonio Torres Dec. ¶ 18, 19; Lucia Torres Dec. ¶ 20, 21; Castaneda Dec. ¶ 18-20; Aguilar Dec. ¶ 18-20. Rice Dec. Summary Exh. 19, Column 14.   The total amount due for these damages is $247.00.

> 6.     Defendants Failed to Provide Plaintiffs With Complete and Accurate Itemized Wage Statements in Violation of Cal. Labor Code § 226.

Cal. Labor Code § 226(a) requires that employers provide wage statements that accurately itemize earnings, hours worked, applicable rates of pay, the name and address of the legal entity that is the employer, and payroll deductions, among other information.  Cal. Lab. Code § 226(a). Employers are required to furnish itemized wage statements every pay period "as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash . . ."  *Id.*   There is no dispute that Defendants calculated payroll on a weekly pay-period basis and, when they paid Plaintiffs and the other current or former employees who worked for Defendants, payment was made on a weekly basis in cash, given in envelopes, without itemized statements. SAC ¶¶ 22; 27(c);  Rosales Depo. pp. 66:5-69:20; Mejia Depo. pp. 38:4-39:22. The failure to provide wage statements is a violation of Cal. Labor Code § 226. An employee is deemed to suffer injury if the employer fails to provide a wage statement.  Cal. Labor Code § 226(e)(2)(A);  *Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, , slip op. at 11 (9th Cir. May 3, 2018).   Plaintiffs need only show that Defendants were aware of the factual predicate—that they were not providing itemized statements. *Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017), *citing Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal. 2015) and *Garnett v. ADT, LLC*, 139 F. Supp. 3d 1121, 1133 (E.D. Cal. 2015).  Defendants handed out cash payments to workers (sometimes in envelopes) without wage statements.  The failure to provide wage statements was therefore knowing and intentional within the meaning of the statute.

California Lab.Code § 226(e)(1) provides that an employee injured by the failure to provide accurate wage statements is entitled to the greater of her damages or "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Defendants failed to provide Plaintiffs and other current or former employees wage statements in 2014 and 2015. Plaintiffs are thus entitled to penalties for each pay period that they worked and did not obtain an itemized wage statement. Rice Dec. Summary Exh. 19 Columns 11 and 11A. The total amount due all Plaintiffs for 2014 and 2015 is $4,600.00.

7.   Defendants Failed to Pay Plaintiffs All Wages Due Plaintiffs
       Upon Termination in violation of Cal. Lab. Code § 202.
       (Seventh Cause of Action)

Employers are liable for "waiting time penalties" when they fail to pay all wages owed timely after the employee's separation from employment. Under Cal. Labor Code § 201, employers are required to pay all wages owed immediately upon discharge. Cal. Lab. Code § 201(a). The end of seasonal work is a "discharge" within the meaning of Section 201. *Valenzuela II.*, 614 F. Supp. at 1103. When employees voluntarily resign or separate themselves from employment, the employer must pay all wages owed within 72 hours. Cal. Lab. Code § 202(a). If an employer willfully fails to pay all wages owed in accordance with sections 201 and 202, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

Because Plaintiffs were not timely paid all wages owed after termination in 2015, they are entitled to waiting time penalties for the 2015 season. Tenorio Dec. ¶ 23, 24; Cristino Santiago Dec. ¶ 23, 24; De Jesus Dec. ¶ 22; Pedro Dec. ¶ 5, 22, 23; Artemio Santiago Dec. ¶ 5, 23-24; Viera Dec. ¶ 27-28; Teresa Dec. ¶ 26-27; Abel Miranda Dec. ¶ 25-27; Teresa Miranda Dec. ¶ 24-25;

1  Antonio Torres Dec. ¶ 23, 25; Lucia Torres Dec. ¶ 23 – 24; Castaneda Dec. ¶ 28-29; Aguilar Dec. ¶

2  28-29.

3          Plaintiffs Francisco Viera, Antonio Torres, Lucia Torres, Ezequiel Aguilar, and Irma

4  Castaneda are also entitled to waiting time penalties after discharge from seasonal work in 2014

5  because they were not compensated for meal period premiums that year.  Antonio Torres Dec ¶ 8;

6  Lucia Torres Dec. ¶ 8; Aguilar Dec. ¶ 6; Castaneda Dec. ¶ 6. Meal period premiums are "wages"

7  within the meaning of California law.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094,

8  1114 (2007) (holding that rest and meal period premiums are wages rather than penalties).  Further,

9  the failure to pay meal period premiums timely upon the separation from employment gives rise to

10 waiting time penalties under section 203.  *See In re: Autozone, Inc.*, No. 3:10–md–02159–CRB,

11 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016), review denied, *See Ellison v. AutoZone Inc.*,

12 No. 16–80182, 2017 WL 6048892 (9th Cir. Mar. 3, 2017).

13         As discussed above, Defendants enforced an unlawful meal period practice by because the

14 meal break was always at noon and workers started work before 7:00 a.m.  In fact, on most days

15 crews started 10 to 15 minutes before 6:00 a.m. or 6:30 a.m. Viera Dec. ¶ 3, 8; Teresa Dec. ¶ 3, 7;

16 Abel Miranda Dec. ¶ 3, 9; Teresa Miranda Dec. ¶ 3, 8; Antonio Torres Dec. ¶ 3, 10; Lucia Torres

17 Dec. ¶ 3, 10; Castaneda Dec. ¶ 3, 7; Aguilar Dec. ¶ 3, 7.  Because more than 30 days have passed

18 since Plaintiffs were discharged for the 2014 season without payment of meal period premium,

19         Plaintiffs are each entitled to 30 days' wages at their regular daily rate of $9.00 per hour for

20 8.5 hours, or $2,295.00 each for each season they worked.    Rice Dec. Summary Exh. 19, Column

21 12A (2014 penalties due) and 12B (2014 penalties due).  The total amount due all Plaintiffs for

22 both years is $39,015.00.

23

24         8.    Defendants Failed to Allow Inspection or Provide Copies of

25               Plaintiffs Employee Records in Violation of Cal. Labor Code

26               § 226; (Eighth Cause of Action)

27

28

Employers are required to maintain records of employment, and employees are entitled to inspect and copy those records following a reasonable request to do so.  Cal. Lab. Code §§ 226(a), (b).  Employers are required to comply with an oral or written request to inspect and copy employment records within 21 days.  Cal. Lab. Code § 226(c).  If the employer fails to comply with a written or oral request within this time frame, it is liable to the employee for a penalty of $750, plus injunctive relief and attorney's fees and costs.  Cal. Lab. Code §§ 226(f), (h).  Only an "impossibility of performance, not caused by or a result of a violation of law" may be an affirmative defense to this violation.  Cal. Lab. Code § 226 (c).

Plaintiffs sent a written request to inspect or copy their employment records on or about May 4, 2015, and July 15, 2015.  Rice Dec. Exh. 14, 16.  Defendants never provided records or allowed for inspection of records in response to those requests. Defendant Sylvia Gallardo responded that no such records existed.  Rice Dec. Exh. 15.  Plaintiffs are each entitled to a penalty of $750, plus attorneys' fees and costs.  Rice Dec. Summary Exh. 19 Column 13.  The total amount due all Plaintiffs is $9,000.00

9.   Defendants Failed to Produce or Permit Inspection of
Plaintiffs' Personnel Records in Violation of Labor Code
§1198.5  (Thirteenth Cause of Action)

Pursuant to Labor Code section 1198.5, every employee has a right to inspect and receive a copy of his personnel records relating to his employment.  Cal. Lab. Code § 1198.5(a).  An employer who receives a written request must make such records available for inspection, and must provide a copy, within 30 days.  Cal. Lab. Code § 1198.5(b).  Failure to comply with this provision entitles an employee to a penalty of $750, plus attorney's fees and costs.  Cal. Lab. Code §§ 1198.5(k), (*l*).  Here, Plaintiffs written requests included a request to inspect or copy their employment records on May 4, 2015 and July 15, 2015.  Defendants likewise failed to provide copies of or inspection of these records.  Rice Dec. ¶¶ 18, 19.  Plaintiffs are each entitled to a penalty of $750.00, plus attorneys' fees and costs. Although this is a separate penalty provided by

1  the Labor Code, Plaintiffs do not seek double recovery and the penalty amount due each Plaintiff

2  for this violation is included with the penalty for the Cal. Labor Code § 226(f) violation in Rice.

3  Dec. Summary Exh. 19, Column 13.

4

5           10.    Defendants Committed Violations of Cal. Labor Laws

6                  Against Other Aggrieved Employees and are Liable for

7                  Penalties Pursuant to Cal.Labor Code §§ 2699, et seq., and

8                  Applicable Penalty Provisions (Twelfth Cause of Action)

9        California's Labor Code Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et*

10  *seq.*, empowers an employee to bring a civil action for penalties on behalf of the State of California:

11       [A]ny provision of this code that provides for a civil penalty to be assessed and collected by
         the Labor and Workforce Development Agency or any of its departments, divisions,
12       commissions, boards, agencies, or employees, for a violation of this code, may, as an
         alternative, be recovered through a civil action brought by an aggrieved employee on behalf
13       of himself or herself and other current or former employees pursuant to the procedures
         specified in Section 2699.3.
14
    Cal. Labor Code § 2699(a).  For purposes of PAGA:
15
         "[A]ggrieved employee" means any person who was employed by the alleged violator and
16       *against whom <u>one</u> or more of the alleged violations was committed*.

17  Cal. Labor Code § 2699(c) (emphasis added)*; see also Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261,

18  1265 (9th Cir. 2017).

19       To bring a PAGA claim, the plaintiff must be an "aggrieved employee."  This means that he

20  or she has sustained "one or more of the alleged" violations.  See Cal. Lab. Code §§ 2699(a), (c).

21  Prior to bringing a PAGA claim, the aggrieved employee must give notice to the employer and

22  Labor & Workforce Development Agency of the alleged violations and facts and theories

23  supporting them.  Cal. Lab. Code § 2699.3(a); *see also Mendoza*, 865 F.3d at 1265. Some civil

24  penalties available to an aggrieved plaintiff on behalf of other current or former employees and the

25  state through PAGA are specifically provided in the Labor Code.  But where the Code provision

26  does not specifically provide a civil penalty, there is a penalty of "one hundred dollars ($100) for

27  each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for

28

each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699(f)(2).  Civil penalties recovered under these provisions are split between workers, with 75 percent payable to the LWDA and 25 percent to the workforce.  Cal. Lab. Code § 2699(i).

      a.  Plaintiffs Are Aggrieved Employees and Met The Administrative Exhaustion Requirements Prior To Bringing This Action.

Plaintiffs are aggrieved employees as they each worked for the Gallardo Defendants, and sustained violations of the Labor Code, as detailed above.  SAC ¶¶20-23, 25.

Plaintiffs, through their counsel, sent a certified letter on July 17, 2015 and August 27, 2015 to the Labor and Workforce Development Agency and Defendants, Gabriel Gallardo, Sylvia Esther Gallardo and Manuel Gallardo providing notice of the specific provisions of the Labor Code violated by the Defendants and the facts and theories supporting the violations.  SAC¶ 27; Rice Dec. Exhs. 12, 13.   Plaintiffs stated there that they and other aggrieved employees had been employed by the Gallardo Defendants as employees covered by Wage Order 14 and had all worked for Defendants and suffered from each of the violations alleged in the 12th Cause of Action for which penalties are sought, *viz*., Cal. Labor Code §§s 558, 1182.12, 1197 mandating the payment of minimum wages; Cal. Labor Code § 226.7 mandating meal and rest periods and payment of premium compensation when not provided; California Labor Code sections 201 and/or 202 requiring the payment of all wages due upon termination; California Labor Code section226 requiring accurate itemized wage statements; and Cal. Labor Code §1174 establishing record keeping requirements.  SAC ¶ 26(a)-(f), Rice Dec. Exhs. 12, 13.  The LWDA did not provide notice to Plaintiffs or their counsel within 33 days of the mailing of that letter of their intent to proceed with an action or citation regarding the violations alleged in the July 17, 2015 letter.   Rice Dec. ¶¶ 15, 16.  Plaintiffs properly gave notice of the above violations and the facts and theories in support thereof and were entitled to bring this action.

      b.  PAGA Penalties Due Plaintiffs

**Cal. Labor Code § 1197.1 Penalties, Failure to Pay Minimum Wages Due.**   Plaintiffs each suffered a minimum wage violation when they were not paid all wages due for hours worked

1   for Defendants.  Civil Penalties are due pursuant to Cal. Labor Code § 1197.1  at the rate of

2   $100.00 per Plaintiff, for the first pay period, and $ 250.00 per Plaintiff, per pay period for each

3   subsequent violation. Penalties were calculated using these amounts for each pay period each

4   Plaintiff worked. Rice Dec. Summary Exh. 19, Column 19.  The total amount due for all Plaintiffs

5   for both 2014 and 2015 is $6,700.00.

6          **Cal. Labor Code § 1174.5 Penalties, Failure to Maintain Records.**

7          Cal. Labor Code § 1174(d) requires that employers maintain payroll records "showing the

8   hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any

9   applicable piece rate paid to, employees" for a period of three years.  Cal. Lab. Code § 1174(d).

10  Defendants failed to maintain these records.  (SAC ¶ 26 f.) Payroll register records for 2014

11  produced by Defendants in response to requests for production of records and subpoena for

12  computer records lacked any information regarding the daily hours worked by Plaintiffs, or other

13  employees, or the daily piecework units worked.  Rice Dec. ¶¶ 3, 4, 5,  Exhs. 1, 2, 3a, 3b, 3c.   No

14  payroll records were included in the records produce by Defendants for 2015.  *Id.*  Civil penalties

15  are due pursuant to Cal. Labor Code § 1174.5 in the amount of $500.  Penalties for this violation

16  were calculated at that amount for each Plaintiff.  Rice. Dec. Summary Exh. 19, Column 21.  The

17  total amount of penalties due for all Plaintiffs is $6,000.00.

18          **Cal. Labor Code § 2699(f) Penalties, Failure to Pay Wages Due Upon Termination.**

19          "If an employee not having a written contract for a definite period quits his or her

20  employment, his or her wages shall become due and payable not later than 72 hours thereafter . . ."

21  Cal. Lab. Code § 202.  Plaintiffs each voluntarily quit because they were not paid all wages due.

22  Those wages were not paid within 72 hours of their termination, as required by Cal. Labor Code §

23  201.  As there is no specific civil penalty attached to section 201, penalties are due pursuant to Cal.

24  Labor Code § 2699(f) at the rate of $100.00 per Plaintiff per pay period in which the violation

25  occurred.  For this purpose of this violation penalties were calculated assuming one violation per

26  Plaintiff per year.   Rice Dec. Summary Exh. 19, Columns 22, 22A.  The total amount due all

27  Plaintiffs for both 2014 and 2015 is $1,800.00

28

**Cal. Labor Code § 210 Penalties, Failure to Pay Wages When Due.**

Plaintiffs were not paid all wages due for each pay period as required by Cal. Labor Code sections 205 and 210.  Cal. Labor Code section 210 provides that;

> (a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows:
> (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
> (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

As employees of farm labor contractors, Plaintiffs were entitled to payment of all wages due, including premium pay for denied or late meal and rest periods, on a weekly basis.  Cal. Lab. Code § 205.  That did not occur.  For the purpose of this violation penalties were calculated on a per pay period, per Plaintiff basis at the rate of $100.00 for the first pay period and $200.00 for each subsequent pay period.  Rice Dec. Summary Exh. 19 Columns 23 and 23A.  The total amounts due for these penalties for all Plaintiffs for both 2014 and 2015 is $25,600.00.

**Cal. Labor Code § 558 Penalties, Failure to Pay Premium Pay Due for Meal and Rest Period Violations**.

Plaintiffs suffered a violation of Labor Code section 226.7 when they were not provided mandated meal and/or rest periods and then not paid premium pay for meal and rest periods they were denied.  Failure to pay this premium pay is considered a failure to pay wages and gives rise to civil penalties pursuant to Cal. Labor Code § 558; *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1144-45 (2012). Section 558 provides that:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

1  Cal. Lab. Code § 558, Plaintiffs underpaid wages have already been accounted for in the damages

2  recovery, therefore the PAGA penalty for Plaintiffs is calculated at the rate of at the rate of $50.00

3  per Plaintiff, for the first pay period, and $ 100.00 per Plaintiff, per pay period for each subsequent

4  violation.  Rice Dec. Summary Exh. 19, Columns 24 and 24A.  The total amount of penalties due

5  all Plaintiffs for both 2014 and 2015 is $4,600.00.

6  **Cal. Labor Code § 2699(f) Penalties, Failure to Indemnify for Tools and Equipment**.

7  Plaintiffs suffered a violation of Cal. Labor Code § 2802 when they were not reimbursed

8  for the cost of their tools and equipment.  As there is no specific civil penalty attached to section

9  2802, penalties are due pursuant to Cal. Labor Code § 2699(f) at the rate of $100.00 per Plaintiff

10  per pay period in which the violation occurred.  For this purpose of this calculation it is assumed

11  that all expenditures were made in one pay period and penalties were calculated assuming one

12  violation per Plaintiff.   Rice Dec. Summary Exh. 19, Column 25.  The total amount penalties due

13  for this violation is $1,200.00.

14  c.   <u>PAGA PENALTIES DUE OTHER AGGRIEVED EMPLOYEES</u>

15  "The PAGA 'permits a civil action 'by an aggrieved employee on behalf of himself or

16  herself and other current or former employees' to recover civil penalties for violations of other

17  provisions of the Labor Code.' *Amalgamated Transit Union v. Sup. Ct.*, 46 Cal. 4th 993, 1001

18  (2009) (quoting Cal. Lab. Code § 2699(a)).

19  Labor Code sections 558 also allows an aggrieved plaintiff to recover wages on behalf of

20  other current or former aggrieved employees.  These wages are considered PAGA penalties.

21  *Thurman*, 203 Cal. App. 4th at 1148 (holding that "an aggrieved employee acting as the LWDA's

22  proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty

23  under section 558") (relying on *Reynolds v. Bement*, 36 Cal.4th 1075, 1094 (2005), conc. opin. of

24  Moreno, J.).  But they are not split between the state and the workforce; they are "paid to the

25  affected employee."  Cal. Lab. Code § 558(a)(3).  Wages recoverable under these provisions

26  include rest and meal period premiums.  *Culley v. Lincare Inc*., 236 F. Supp.3d 1184, 1197 (E.D.

27  Cal. 2017).

28

1    Plaintiffs have calculated the amount of underpaid wages, and penalties due to other

2    aggrieved employees based on Defendants' computer records.  Civil Penalties are due under

3    California Labor Code sections 226.3 (wage statement violations), 210 (failure to timely pay wages

4    when due); 558 (failure to pay premium pay for denied meal and rest periods); and 2699(f) (failure

5    to pay wages due upon termination).  Plaintiffs have determined the amount of PAGA penalties

6    and underpaid wages due from testimony of the Plaintiffs, evidence provided by the Kooner

7    Defendants and the limited documents produced by Kern County Cultivation, based on the number

8    of total possible work weeks within the PAGA penalty period, and the number of labor law

9    violations suffered by the crew members.   Rice Dec. ¶¶ 22(j)(i)-(j)vii), Exh. 19.   Plaintiffs

10   multiplied the number of work weeks (taking the total number of weeks worked by all of the other

11   aggrieved employees within the one year period prior to July 17, 2015) multiplied by the applicable

12   PAGA penalties for each work week to determine total PAGA liability.

13    Plaintiffs used the same formulas used to calculate the penalties owed them, to calculate the

14   penalties owed the other aggrieved employees for 2014 and 2015.  However, because the payroll

15   records were incomplete calculations for most violations were done for 2014 and 2015 by the

16   aggregate number of workers per pay period, rather than worker.  Rice Dec. ¶ 23, Summary Exh.

17   20, page 1.  However, when a penalty was a one-time penalty that was included for each worker

18   identified in 2014.  Rice Dec., ¶ 23, Summary Exh 20, page 2.  For 2015 this includes an additional

19   amount based on an estimate of the total number of unidentified workers for 2015.  This estimate is

20   based on the number of workers employed in 2014.  Rice Dec. ¶ 23(g).   In order to avoid

21   duplication of penalties, the amounts for 2015 were reduced by the PAGA penalties amounts

22   awarded Plaintiffs.    Rice Dec., Summary Exhibit 20, line entitled "Plaintiff Offset".

23   **Cal Labor Code § 226.3 Penalties, Wage Statement Violations.**

24    For 2014 and 2015, based on testimony of Blanca Rosales, and Plaintiffs, all workers failed

25   to receive a compliant wage stub for any pay period.  Penalties were calculated at the of $250.00

26   per worker, per pay period (offset by amounts due to Plaintiffs).   Rice Dec. Summary Exh.20,

27   page 1, Column 6.   The total amount due is $73,500.

28

**Cal. Labor Code § 558 Penalties, Failure to Pay Premium Pay Due for Meal and Rest Period Violations.**

For 2014 and 2015 based on the testimony of Blanca Rosales and Plaintiffs all workers received a late lunch and/or no rest periods and were not paid premium pay compensation.  One to two hours per day of premium compensation was due, but unpaid for each day in each pay period. Days worked during each pay period were taken from invoice sheets provided by the Gallardo Defendants to Nazar Kooner.  Rice Dec. Exh. 4, Summary Exh. 20, page 1 Column 7.  Because accurate daily records were not provided for 2014 it was not possible to determine the actual number of days in each pay period for 2014.  Therefore, an average was taken of the number of days worked, per pay period in 2015.  That average – 4 days per pay period was then applied to 2014. *Id.*  Penalties under Cal. Labor Code § 558 were then calculated using $50.00 for the first pay period, plus $100.00 for each subsequent pay period and multiplying that amount by the number of workers in that pay period (offset by amounts awarded Plaintiffs).  Rice Dec. Summary Exh. 20 page 1, Column 7.  The total amount of the penalty due is $ $88,785.00.  The underpaid wages due were then calculated, assuming one hour of premium pay due per day, as provided in Labor Code section 226.7 at the minimum wage rate of $9.00 per hour.    Rice Dec. Summary Exh. 20 page 1, Column 8. The total amount of underpaid wages due is $34,119.00.  100% of underpaid wages goes to other aggrieved employees.

**Cal. Labor Code § 210 Penalties Failure to Pay Periodic Wages Due.**

Because other aggrieved workers, like Plaintiffs were not paid all premium compensation due, at each pay period there was a failure to pay all wages due under Labor Code section 205 and penalty due for each pay period as provided in Cal. Labor Code section 210.  For the purpose of this violation penalties were calculated on a per pay period, per worker basis at the rate of $100.00 for the first pay period and $200.00 for each subsequent pay period.   Rice Dec. Summary Exh. 20, page 1, Column 9.  The total amount of the penalties due is $99,800.00.

**Cal. Labor Code § 1174.5 Penalties, Failure to Maintain Records.**

As demonstrated previously, Defendants failed to maintain the records required by Cal. Labor Code § 1174.5 and those records that were maintained fail to include the daily hours worked

and applicable rates of pay for all aggrieved employees.   Civil penalties are due pursuant to Cal. Labor Code § 1174.5 in the amount of $500.  Penalties for this violation were calculated at that amount for each other aggrieved worker.  For Exh. 2014, a list of workers was obtained from the payroll register provided by Plaintiffs (Rice Dec. Exh. 3a, 3b, 3c) and their names were entered into the penalties calculation sheet.   Rice Dec. Summary Exh. 20, page 2, Column 1. Defendants and known foremen who were included on this payroll register were not included in the list.   No comparable list was provided for 2015.  Therefore, for 2015 an estimated number of workers was used to determine the penalty amounts due based on the 2014 workforce of 162 workers. The penalty amount of $500.00 was then entered for each identified worker for 2014, and for the totally number of estimated workers for 2015.  Rice Dec. Summary Exh. 20, page 2, Column 2. $164,000.00.

**Cal. Labor Code § 2699(f) Penalties, Failure to Pay Wages Due Upon Termination.**

Because premium pay was not paid to other aggrieved employees for denied meal or rest periods for 2014 or 2015, each employee was not paid all wages due upon termination.  As there is no specific civil penalty attached to section 201, penalties are due pursuant to Cal. Labor Code § 2699(f) at the rate of $100.00 per other aggrieved employee for the final period of each year worked.  For this purpose of this violation penalties were calculated assuming one violation per Plaintiff.   Rice Dec. Summary Exh. 20, page 2, Column 3.

To ensure that there is not double recovery for the Plaintiffs, they were not included in the 2014 calculation list of workers for whom penalties are due and the amounts of penalties due for violations in 2015 were reduced by the amounts to be awarded to Plaintiffs for those violations. Rice Dec., ¶ 24, Summary Exh. 20 page 1, line entitled "Plaintiff Offset".  The total amount of penalties due is $32,800.00.

All penalties, except for the underpaid wages due, are to be allocated at the rate of 75% to the LWDA and 25% to other aggrieved employees.

11.     Plaintiffs are Entitled to Injunctive Relief for Violation Labor

Laws and the Farm Labor Contractors Act and the California

Unfair Competition Law. (Tenth and Eleventh Causes of

Action.

Each of the labor law violations identified above constitutes an unlawful business practice

and may be enjoined pursuant to California Business and Professions Code section 17203.

Additionally, Defendants, by operating without a valid farm labor contractor license, are engaging

in unlawful and unfair business practices by violating California Labor Code sections 1683 and

1695.7 (SAC Docket Nos. 34, ¶¶ 16, 17).  Injunctive relief is appropriate as part of a default

judgment. *Philip Morris U.S.A. Inc. v. Castworld Prods*., 219 F.R.D. 494, 502 (C.D. Cal. 2003)

(proposed injunctive relief is appropriate in default judgment because the claims otherwise warrant

an injunction, and Defendant, though well aware of serious claims brought against it, chose to

ignore the lawsuit).

12.     Plaintiffs Are Entitled to An Award of Attorneys' Fees and

Costs.

Plaintiffs are entitled to recover attorneys' fees and costs for the violations that they were

subjected to as provided in the FLSA, 29 U.S.C. § 216 (b), California Labor Code sections 1194,

1194.2, 1695.7(c)(4), and 2699.  Plaintiffs' counsel have expended 655.23 hours connected with

the litigation of this case, including discovery conducted as to the Kooner defendants which was

necessary to obtain enough information to determine the Gallardo defendants' liability.  Based on

the reasonably hourly rates of Plaintiffs' attorneys, and after adjustment to avoid duplication

Plaintiffs seek an award of $311,720.50 in attorneys' fees, plus an additional amount of $27,771.75

for costs.  Rice Dec. ¶¶ 27, 28; Declaration of Marco Palau in Support of Motion for Entry of

Default Judgement, ¶¶ 3, 4.

The hours, and rates requested for Plaintiffs' counsel are comparable to those approved in

other litigation in the Eastern District.   See, e.g.,  *Emmons v. Quest Diagnostics Clinical

Laboratories, Inc*., 2017 U.S. Dist. LEXIS 27249, at *22 (E.D. Cal. Feb. 24, 2017) [hourly rates

between $545 and $695 for senior counsel and partners, and between $370 and $495 for associates were reasonable]; *Barbosa v. Cargill Meat Solutions Corporation*, 297 F.R.D. 432 (E.D. Cal. 2013) [ "prevailing hourly rates in the Fresno division of the Eastern District …are in the $400 range, with rates up to $650 to $675 approved for partners and senior associates with significant years of experience" finding that $720 per hour for an attorney with 21 years of experience; $560 per hour for an attorney with 8 years of experience; $400 per hour for an attorney with 5 years of experience; and $280 for an attorney with 2 years of experience were reasonable]; *Gong-Chun v. Aetna, Inc.*, 2012 U.S. Dist. LEXIS 96828, at *60-63 (E.D. Cal. July 11, 2012) [ reasonable rates for the Fresno area: $695 per hour for an attorney with 30 years of experience; between $590 and $655 per hour for attorneys with 12 to 16 years of experience; between $475 and $520 per hour for attorneys with 6 to 9 years of experience; and between $300 and $420 per hour for attorneys with 1 to 5 years of experience].

## C.   THERE IS NO SIGNIFICANT DISPUTE AS TO SIGNIFICANT ALLEGATIONS IN THE COMPLAINT

The fact that workers are owed wages is largely uncontested.  Defendants have filed cross-claims against each other alleging that the other was responsible for compensating workers but failed to do so.  In particular, the Kooner Defendants allege that they paid the Gallardo Defendants for the labor provided and that the Gallardo Defendants failed to pay workers.  (Crossclaim of Nazar Kooner; Pawan Kooner; Hardeep Kaur ["Kooner Crossclaim"] ¶¶ 17-18, Doc. # 46).  The Gallardo Defendants deny this occurred and allege that the Kooner Defendants failed to pay workers.  (Defendants Gallardos Cross-claim against Nazar Kooner, Pawan S. Kooner and Hardeep Kaur ["Gallardos Crossclaim"] ¶¶ 15-16, Doc. #47). Thus, the principal question in this case is how much is owed in wages and penalties to the workforce and the state.

Plaintiffs' damages and penalties are based on their testimony, which was not refuted by the Gallardo Defendants.  The calculation of PAGA penalties due was taken from documents produced

by the Gallardo Defendants, or produced by the Kooner Defendants, prepared by the Gallardos, or Kern County Cultivation, Inc.

### D.    DEFENDANTS ARE NOT UNFAIRLY PREJUDICED AS THEY HAVE HAD AMPLE OPPORTUNITY TO DEFEND THE ALLEGATIONS AND PRODUCE EVIDENCE AND DEFAULT WAS ENTERED BECAUSE OF THEIR FAILURE TO DO SO

The Gallardo Defendants have been on notice of the serious nature of the allegations against them since 2014.  Certain aspects of their practices were the subject of individual complaints by workers filed with the State Labor Commissioner regarding work performed prior to the time-period encompassed in this action.  Rice Dec., Exh. 1, Bates Nos. KCCI 000152-289.  Others were scrutinized by the Labor Commissioner in its own investigation.[2]  These complaints indicate a history of labor law violations and disregard for the administrative system available to workers to remedy those violations.   Entry of judgment on default is likely the only way to obtain relief from these defendants.   "Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery." *Philip Morris U.S.A.*, 219 F.R.D. at 499-502 (applying the *Eitle* factors).

Defendants were provided notice of Plaintiffs' complaints on behalf of themselves and other aggrieved employees through Plaintiffs' July 17, 2015 letter to them and the LWDA.  Rice Dec. Exh. 14. They were properly served, answered, and then failed to respond to discovery resulting in the entry of default as a discovery sanction based on the recommendations of Judge Thurston.  (Docket Nos. 71, 76, as to Kern County Cultivation, Inc., and Docket Nos. 92, 93, 94, 97 as to Gabriel Gallardo, Senior, Sylvia Esther Gallardo and Manuel Gallardo).  Plaintiffs

---

[2] Rice Dec. Exh. 1, Bates No. KCCI 000294-300.  As a result of this investigation, some penalties were assessed against Gabriel Gallardo for the period of March 1, 2015, through June 27, 2015 for wage statement violations of Labor Code § 226.  These assessments overlap the period of the PAGA claims in this action, therefore no PAGA penalties for violations of section 226 are sought for that period for Plaintiffs or other aggrieved employees. Rice Dec. Summary Exh. 20 Column 6.

1    acknowledge that Defendants were without counsel at that time. However, that should not be the

2    basis for denying entry of a money judgment, particularly given the long history of labor violations

3    demonstrated by the record.

4

5        **E.     THE MONETARY RECOVERY IS NOT EXCESSIVE, OR SPECULATIVE**

6             **AND IS BASED ON INFORMATION FROM RECORDS PREPARED BY**

7             **DEFENDANTS**

8        The total judgment sought against the Gallardo Defendants, collectively is $105,808.95 for

9    Plaintiffs, in wages, statutory penalties, interest and liquidated damages, $49,100.00 for associated

10   PAGA penalties, $12,275.00 to be distributed to Plaintiffs and $36,825 to be paid to the LWDA.

11   The separate award of PAGA penalties for other aggrieved employees includes underpaid wages of

12   $88,785, payable to the other aggrieved employees, plus civil penalties of $458,885, $114,721.25

13   to be distributed to other aggrieved employees and $344,163.75 to be paid to the LWDA.

14   Additionally, $339,492.25 in attorneys' fees ($311,720.50) and costs ($27,771.75) is sought.

15   Although these amounts are significant, they should come as no surprise to Defendants since each

16   violation and the basis for recovery was provided to them both in the various iterations of the

17   complaint and, for the PAGA violations, in July of 2015. Rice Dec. ¶ 14, Exh. 12.  Other courts

18   have recognized that default judgment entered for a single plaintiff against a defaulting entity were

19   not excessive, even though over one million dollars.  *NewGen,* 840 F.3d at 617 (upholding the

20   district court's damage award of $1,483,075.84, based on the detailed declaration of damages

21   submitted by the Plaintiff).  The amounts requested are not "'illogical,' 'implausible,' or without

22   "support in inferences that may be drawn from facts in the record…"  *Id.* at 616; *see also Philip*

23   *Morris U.S.A.,* 219 F.R.D. at 500, awarding $2,000,000 in statutory damages.

24       The court may feel that some of the penalties sought are duplicative, in that they arise from

25   similar behavior.  However, it is important to note that each one of these penalties is designed to

26   create a disincentive to exactly the type of activities engaged in by the Defendants.  This is

27   acknowledged in the language of these penalty statutes.  Cal. Labor Code § 2699 begins with the

28

1  phrase "Notwithstanding any other provision of law…."  Cal. Labor Code § 1197.2 begins "In

2  addition to any other penalty imposed by law…" Cal. Labor Code § 210 begins "In addition to, and

3  entirely independent and apart from, any other penalty provided in this article . . ." Clearly the

4  California legislature intended these penalties to be in addition to the recovery provided for

5  workers under other statutes, and that intent should be followed with respect to any entry of

6  judgment.

7      It is also important to remember that the vast majority of the PAGA penalties – 75% of all

8  penalties except for the $36,825 in underpaid wages due for the meal and rest period violations

9  (Rice Dec. Summary Exh. 20, page 1, Column 8) -- will go to the LWDA, and not workers.  Cal.

10  Lab. Code § 2699(i).[3]  This will not create a windfall for Plaintiffs, or for the other aggrieved

11  employees.  It will hopefully, create the financial disincentive needed to stop the Defendants from

12  engaging in this pattern and practice of worker exploitation, while providing some limited

13  compensation to the workers who endured this unfair treatment.

14      The PAGA expressly provides that a court may award a lesser amount than the maximum

15  civil penalty amount if, "based on the facts and circumstances" of the case it would otherwise

16  result in an award that is "unjust, arbitrary, oppressive, or confiscatory."  Cal. Lab. Code §

17  2699(e)(2).  This provision provides the discretion for courts to use this section to eliminate

18  duplicate penalties for the same violation; to reduce penalties when the aggrieved employees

19  suffered no actual injury, *Fleming v. Covidien, Inc*., 2011 WL 7563047, *4 (C.D. Cal. 2011)  ),

20  defendants lacked knowledge or intent (*id*.), or the law was unclear (*Cotter v. Lyft, Inc*., 193 F.

21  Supp. 3d 1030, 1037 (N.D. Cal. 2016)) (approving reduced penalties as part of a settlement

22  agreement).  Applying these cases, it may be appropriate to consider whether an award of penalties

23  under both Cal. Labor Code § 210 and section 558 for unpaid wages arising from the failure to pay

24  meal and rest period compensation is appropriate. Plaintiffs assert that it is appropriate to punish

25  the failure to pay this compensation, and the failure to include in in the periodic payment of wages,

26

27  [3] This includes the PAGA penalties due the Plaintiffs.  Rice Dec. Summary Exh. 19, Columns 19-
25.

28

as these are discrete violations.  However, if the court considers that to be duplicative, Plaintiffs would urge that the court assess the section 558 penalty, which is the lower amount, but includes the additional portion of underpaid wages due and payable to the aggrieved employees which would result in a greater payment to the injured employees. (Rice Dec. Summary Exh. 20, page 1, Columns 7 and 8, respectively.)  This would reduce the PAGA liability by $ 99,800. (Rice Dec. Summary Exh. 20, page 1 Column 9.)

**F.      A CLAIMS PROCESS SHOULD BE ESTABLISHED TO PROVIDE FOR DISBURSEMENT OF THE PAGA FUNDS.**

Given that this is a default judgment, and Plaintiffs anticipate some difficulty collecting monies awarded.  Plaintiffs propose that the court retain jurisdiction of this matter for the purposes of overseeing collection.  In the event that funds are collected, Plaintiffs propose that they be distributed/allocated in the first instance to Plaintiffs, for their individual causes of action, including attorneys fees and costs, then to the PAGA aggrieved employees for underpayment of wages due and their 25% penalty distribution and then to the LWDA.   Plaintiffs propose to provide notice immediately upon entry of judgment to all other aggrieved employees that can be located of the potential for recovery.  Further proposals regarding the claims process and distribution would then be addressed when funds are collected from Defendants.

**IV.      CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the court enter judgment for damages, penalties, interest and attorneys' fees and costs, jointly and severally against Defendants Gabriel Gallardo, Sr. Sylvia Esther Gallardo, Manuel Gallardo, and Kern County Cultivation, Inc. as follows:

Damages, Interest and Civil Penalties awarded to Plaintiffs, consistent with Summary Exhibit 19 for a total amount of $105,808.95.

1    PAGA Penalties in the aggregate arising from violations suffered by Plaintiffs, consistent

2    with Summary Exhibit 19 for a total amount of $ $48,900.00, 25% payable to Plaintiffs and 75%

3    payable to the California Labor and Workforce Development Agency;

4    PAGA Penalties in the aggregate arising from violations suffered by other aggrieved

5    employees, consistent with Summary Exhibit 20, for a total amount of $458,885, 25% payable to

6    other aggrieved employees and 75% payable to the California Labor and Workforce Development

7    Agency;

8    PAGA Underpaid Wages due other aggrieved employees in the aggregate of $88,785,

9    payable to the other aggrieved employees, 100% payable to other aggrieved employees.

10    Attorneys' fees in the amount of $311,720.50; and

11    Costs in the amount of $27,771.75;

12    And that an injunction enter as to Defendants pursuant to California Business and Professions

13    Code section 17203, Cal. Labor Code § 1695.7(c)(4) and Federal Rule of Civil Procedure directing

14    that they:

15    1.  Cease conducting business as farm labor contractors until such time as they are duly

16    licensed by the State of California to provide such services;

17    2.  Provide meal periods beginning at the sixth hour of the work day, and include in the

18    calculation of that time preliminary time spent going to the work site and/or receiving training

19    3. Provide rest periods of a full 10 minutes excluding any time spent walking to and from the

20    location designated for the breaks.

21    4.  Pay premium pay compensation of one hour of pay at the regular rate of compensation to

22    any worker denied a meal or rest period or for whom the meal period was provided after the

23    beginning of the sixth hour of the work day.

24    5.  Pay all wages due, including premium pay compensation, weekly on the predesignated

25    day for payment;

26

27

28

6.   Pay all wages due, including premium pay compensation, on the day of termination for every worker discharged by you and on the day of termination or within 72 hours of notice that a worker is voluntarily terminating;

7.   Provide gloves and scissors in good working order and reimburse workers for gloves and scissors they purchase for use while working; and

And that the court retain jurisdiction for the purpose of reviewing a proposal for distribution to other aggrieve employees and the LWDA of any funds collected from the Defendants

Respectfully submitted,

Dated: May 8, 2018                        MALLISON & MARTINEZ

                                          CALIFORNIA RURAL LEGAL ASSISTANCE


                                                      /s/ Marco A. Palau
                                          By: _____

                                               Attorneys for Plaintiffs