UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCARIA TENORIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GABRIEL GALLARDO, et al.,<br><br>Defendants. | No. 1:16-cv-00283-DAD-JLT<br><br>ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT<br><br>(Doc. No. 135) |

This matter is before the court on plaintiffs' unopposed motion for approval of the settlement agreement. On June 18, 2019, that motion came before the court for hearing. Attorney Cynthia L. Rice appeared on behalf of plaintiffs, and attorney Randall M. Rumph appeared on behalf of defendants Nazar Kooner, Pawan Kooner, and Hardeep Kaur (the "Kooner defendants"). No appearance was made by or on behalf of Silvia Gallardo, Gabriel Gallardo, Manuel Gallardo, and Kern County Cultivation, Inc. (the "Gallardo defendants"), against whom default judgment has previously been entered. (Doc. No. 114.) Having considered plaintiffs' briefing, including the supplement filed following the hearing (Doc. No. 139), the court will approve the settlement agreement.

/////

/////

1

# BACKGROUND

This multi-party lawsuit alleges that defendants employed plaintiffs and other farm workers to perform seasonal agricultural work in and around Kern County in 2014 and 2015. Plaintiffs allege that this employment violated various federal and state labor laws, including failure to pay all wages due, failure to provide timely meal periods, failure to provide complete wage statements, and operating as an unlicensed farm labor contractor. (Doc. No. 109-37 at 7.) As alleged in plaintiffs' second amended complaint, the Gallardo defendants were employed as farm labor contractors under contracts between them and the Kooner defendants on land owned or operated by the Kooner defendants. (Doc. No. 34 ("SAC") at ¶¶ 1, 12–14, 24.) The Gallardo defendants, in turn, hired plaintiffs to perform agricultural labor on that same land. (*Id.* at ¶¶ 8–11.)

On January 28, 2019, the undersigned issued an order granting in part plaintiffs' motion for entry of default judgment against the Gallardo defendants. (Doc. No. 114.) Plaintiffs argue that the Kooner defendants are jointly and severally liable for all damages, penalties, and interest identified in that order, including PAGA penalties and underpaid wages due to other aggrieved employees who are not parties to this action. (Doc. No. 135-1 at 16.) Accordingly, the parties have used this court's default judgment order as a baseline for the proposed Settlement Agreement (the "Agreement"). (*See id.* at 17.)

According to the Agreement, submitted as an attachment to the declaration of attorney Cynthia Rice, the Kooner defendants will pay a total sum of $300,000.00. (Doc. No. 135-2 ("Rice Decl.") at 14.) Of that amount, $104,000.00 will be paid directly to the named plaintiffs, $84,000.00 will be paid to other aggrieved employees, $12,000.00 will be paid to the California Labor and Workforce Development Agency (the "LWDA"), and $100,000.00 will be paid for attorneys' fees, costs, and claims administration. (Doc. No. 135-1 at 17.) As plaintiffs explain in their motion, this allocation provides "full payment of underpaid wages due [to] Other Aggrieved Employees, plus a significantly reduced additional amount for civil penalties; somewhat less than full amount of wages, damages, penalties and interest due [to] the named Plaintiffs; and a significant reduction in the amount of penalties to be paid to the LWDA." (*Id.*)

**LEGAL STANDARD**

In 2003, the California Legislature enacted the Private Attorney General Act, California Labor Code §§ 2698 *et seq.*, after declaring: (i) that adequate financing of labor law enforcement was necessary to achieve maximum compliance; (ii) that staffing levels for state labor law enforcement agencies have declined and were unable to keep up with a growing labor market; (iii) that vigorous assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct; and (iv) that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to seek and recover civil penalties for Labor Code violations. 2003 Cal. Stat. 6629. Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a).[1] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Accordingly, a judgment in a PAGA action "binds all those, *including nonparty aggrieved employees*, who would be bound by a judgment in an action brought by the government." *Id.* (emphasis added); *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.").

The PAGA statute imposes a number of limits on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages available privately through direct or class action claims. *Id.* Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab.

/////

---

[1] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

3

Code § 2699.3(a)(1). Third, any civil penalties recovered must be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved employees. *Id.* § 2699(i).

Finally, a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(*l*)(2).[2] There is no binding authority identifying the proper standard of review of PAGA settlements to be employed by the court. In the class action context, where PAGA claims often also appear, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). However, this is not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to protect the public rather than for the benefit of private parties. *See Arias*, 46 Cal. 4th at 986. In one recent district court case, the LWDA provided some guidance regarding court approval of PAGA settlements. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016) (Doc. No. 736 at 2–3.).[3] In that case, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stressed that

> when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the same with approval).

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in

---

[2] The proposed settlement must also be submitted to the LWDA at the same time it is submitted to the court. *Id.*

[3] *See also id.* at 3 ("The LWDA is not aware any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action.").

4

evaluating the PAGA-only settlement agreement now before the court.  Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate[4] in view of PAGA's public policy goals.[5]

**DISCUSSION**

Two points bear mentioning at the outset.  First, as already discussed, this is not a class action, nor is it the type of collective action to which the normal logic of class action settlements might apply.  *See McManus v. City of Ceres*, No. 1:17-cv-00355-DAD-BAM, 2018 WL 4262126, at *2 (E.D. Cal. Sept. 6, 2018) (noting that "courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement").  Although represented by the same attorneys, all plaintiffs in this action have been individually named.  The second point follows from the first:  because this is not a collective action, the court's role in approving any settlement agreement is quite limited.  While California Labor Code § 2699(*l*)(2) requires this court to approve any settlement agreement with respect to plaintiffs' PAGA claims, the court is aware of no corresponding provision that imposes any duty on this court to supervise settlement of plaintiffs' non-PAGA claims.  Indeed, plaintiffs concede that "there is no statutory requirement that funds allocated to Plaintiffs for non-PAGA causes of action be approved by the court."  (Doc. No. 135-1 at 26.)

Normally, how the parties elect to dispose of claims via settlement is not the concern of this court.  Unless a statute imposes an affirmative obligation upon the court to review and

---

[4] The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following:  the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel.  *See Officers for Justice*, 688 F.2d at 625.

[5] In the absence of class claims in this case, the parties suggest that the court should instead adopt the "genuine and meaningful" standard referenced in the LWDA Comments.  In *O'Connor*, neither the LWDA nor the district court distinguished between the "genuine and meaningful" standard on the one hand, and "fundamentally fair, reasonable, and adequate" standard on the other.  Moreover, this court has not found and cannot imagine any articulable definition for "genuine and meaningful" that would not account for the consideration of factors under the "fundamentally fair, reasonable, and adequate" standard, described above.

5

approve the terms of a settlement agreement, the typical approach is for the parties to reach a private agreement and then stipulate to dismissal pursuant to Federal Rule of Civil Procedure 41. Here, by contrast, the parties have asked the court to approve the Agreement as a whole, even though only the PAGA claims require court approval. The court declines to do so—because the court is required only to approve settlement of the PAGA claims, the court will confine its analysis accordingly.

With respect to the terms of the Agreement itself, the court notes the rather unusual structure of the terms. As plaintiffs candidly acknowledge in their briefing, the Agreement compensates the California Labor Code claims at almost full value. By contrast, the PAGA claims are drastically discounted, settling for literally pennies on the dollar. It is quite obvious to the undersigned why the Agreement was structured in this manner. As noted in the court's prior order, 75% of penalties awarded under PAGA must be paid to the LWDA, while only 25% are to be paid to the plaintiffs or other aggrieved employees. (Doc. No. 114 at 22.) Thus, by reducing the value of the PAGA claim for settlement purposes, plaintiffs have ensured that the lion's share of the amount awarded under the Agreement goes directly to the plaintiffs and the other aggrieved employees. The Kooner defendants, for their part, have expressed no position as the allocation of the settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (noting that "a defendant is interested only in disposing of the total claim asserted against it," and has no interest in how that money is ultimately divided). Only the amount to be received by the LWDA, which of course is not a party to this action at all, is reduced as a result of this resolution.

The court is sensitive to the circumstances faced by the parties. Plaintiffs' counsel is responsible for ensuring that their clients receive the maximum possible award on their claims, and has creatively crafted an Agreement that does precisely that. For their part, the Kooner defendants have indicated that this litigation has imposed substantial financial burdens on them, possibly necessitating declaring bankruptcy. (Rice Decl. at ¶ 10.) Attorney Rice accordingly states that discounting certain claims may be the only way to keep the Kooner defendants out of bankruptcy while simultaneously ensuring that plaintiffs receive adequate payment. (*Id.*) Nonetheless, because the dollar value of the PAGA claims under the terms of the Agreement is so

low, the court might well be inclined to deny approval were it not for the information submitted by plaintiffs following the hearing. Pursuant to the court's request, attorney Rice has submitted a supplemental declaration to the court averring that she contacted attorneys employed by the LWDA regarding the proposed settlement in this case. (Doc. No. 139 ("Rice. Supp. Decl.") at 4.) Attached to that declaration is an email from attorney Michael L. Smith, who indicated that the LWDA has no objection to the Agreement as written. (*Id.* at 4, 6.) With this understanding, the court will approve the Agreement as it pertains to the award of PAGA penalties.

Separately, plaintiffs ask the court to approve the proposed attorneys' fee award in the amount of $100,000.00. (Doc. No. 135-1 at 29.) The relevant provision of PAGA provides that "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g). Calculating attorneys' fees under this provision requires application of the lodestar. *See Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1072 (N.D. Cal. 2018); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (noting that "the fee setting inquiry in California ordinarily begins with the 'lodestar'"); *Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1004 (1982) ("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.").

In their motion, plaintiffs indicate that their request for attorneys' fees here overlaps substantially with their prior motion for attorneys' fees. (*See* Doc. No. 135-1 at 29.) By written order, the court has already granted that motion for in part. (Doc. No. 140.) That order concluded that, under the lodestar method, plaintiffs were entitled to an award of $249,630.25 in attorneys' fees. (*Id.* at 12.) Here, by contrast, plaintiffs seek an award of only $100,000.00, far below the lodestar amount. The analysis set forth in the court's prior order applies here as well, and the court will approve the $100,000.00 in attorney's fees as requested.

In sum, the court finds that the settlement of the PAGA claims is fair and reasonable and will approve that portion of the settlement agreement as well as plaintiffs' request for attorneys' fees.

/////

**CONCLUSION**

For these reasons,

1. The motion for approval of the settlement agreement (Doc. No. 135) is granted; and

2. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: **September 30, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE